584 P.2d 604

**Jeanne C. BAUM, Appellant,**

v.

**James R. BAUM, Appellee.**

**No. 2 CA–CIV 2658.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 20, 1978.

Rehearing Denied Aug. 29, 1978.

Review Denied Sept. 19, 1978.

Wolfe & Ostapuk, David K. Wolfe, Tucson, for appellant.

Bilby, Shoenhair, Warnock, & Dolph, P. C., Richard M. Bilby, Mary Mangotich, Tucson, for appellee.

OPINION *

OGG, Judge.

The major issue raised in this appeal is whether the trial court in a dissolution proceeding erred in making a distribution of the marital property.

On November 10, 1976, the 25-year marriage of appellant Jeanne C. Baum (wife) and appellee James R. Baum (husband) was dissolved. The decree awarded the wife custody of the minor children, $300 per month per child for child support, and $500 per month as spousal maintenance. Also,

the trial court found that the wife owned separate property worth $38,471.12, while the husband's separate assets were valued at $270,818.59, and it distributed the community property so that the wife would receive assets valued at $267,509.44 while the husband would receive assets of $157,-434.36. The husband's portion of the community distribution included all of the parties' stock in Baum & Adamson Tire & Automotive Service Co. (B&A), a corporation managed by the husband. Additionally, the husband was ordered to pay $10,000 toward the wife's attorney fees, $1,000 toward her accountant fee and $36,560 for community debts. The wife now challenges this award.

## I. DISPROPORTIONATE DISTRIBUTION OF COMMUNITY PROPERTY

The wife's major contention is that the trial court failed to comply with *Provinzano v. Provinzano,* 116 Ariz. 571, 570 P.2d 513 (Ct.App.1977), which requires the community property to be distributed substantially equally. The major thrust of the wife's argument is that the trial court erred in computing the value of the community property and, as a result, awarded the husband property worth substantially more than that awarded the wife. In considering this position, this court must adhere to the rule that the distribution of marital property is left to the sound discretion of the trial court and will not be disturbed unless clearly erroneous. *Nesmith v. Nesmith,* 112 Ariz. 248, 540 P.2d 1229 (1975); *Wick v. Wick,* 107 Ariz. 382, 489 P.2d 19 (1971). With that rule in mind we now consider the challenged values.

### A. Ownership of B&A Stock

The wife's primary argument that the distribution of community property was disproportionate is that the trial court failed to apportion to the community the value of certain shares of B&A stock which were a community asset. It is uncontroverted that

* At the request of Division Two and pursuant to the authority of ARS § 12–120, this case was transferred to Division One for Disposition.

part of B&A shares were community and part were the husband's separate property. The number of shares attributable to each is disputed, making necessary a discussion of how the shares were acquired.

Initially, the husband received a gift from his father of 80 shares of B&A stock. The husband also owned 5 shares as custodian for the parties' children. The remaining 115 shares of B&A were originally owned by four other members of the Baum and Adamson families. In December, 1967, the husband negotiated a deal, to take effect on March 15, 1968, for the total 200 shares of B&A to be sold to the B. F. Goodrich Co. (Goodrich). For tax purposes the husband did not transfer his 85 shares to Goodrich when the other shareholders did. Then by a separate agreement the husband acquired an option from Goodrich to buy the other 115 shares at a price of $215,017.59. This sale was conditioned upon the continued good business relationship between B&A and Goodrich and upon the husband serving as manager at a salary of $18,000 per year plus a bonus.

The husband transferred this option to purchase B&A stock to the B&A Co. for no consideration. In 1969, the corporation exercised the option and repurchased the stock which was shown as treasury stock in the company books. At the time of the dissolution proceeding the corporation had paid $190,017.59 toward the purchase price. This money was paid out of the corporation's retained earnings.

At the same time B&A was repurchasing the stock, the husband cancelled a $32,500 note from B&A in return for 33 shares of stock. The note had been issued for a loan made by the husband to the corporation with funds paid out of a bank account which contained both the husband's separate and community funds.

The trial court held that since the loan for which the 33 shares were issued was paid out of a commingled account, those shares were a community asset. This stock, however, was awarded to the husband as part of his portion of the community property and was offset against community assets awarded to the wife. The court also ruled that the treasury stock had no independent value and thus it did not dispose of it as an asset in the distribution of property.

It is the wife's position that the option for the 115 shares of treasury stock did have a value and that the trial court erred in not including this value as a community asset. She argues that 1) the option to purchase was a property right and since it was offered to the husband during the marriage, it is presumed to be a community asset. ARS § 25–211; *Blaine v. Blaine,* 63 Ariz. 100, 159 P.2d 786 (1945); 2) the transfer of the option to B&A, the husband's alter ego, did not change the characterization of the property right as community nor deprive the community of its rights in the value of the option; 3) when the corporation exercised the option and purchased the treasury stock, the community's rights in the value of the option were transferred into rights in the value of the treasury stock; 4) this value is the sum which the corporation paid for the stock, $190,017; and 5) since the husband owned 80 shares of B&A as his separate property and was awarded 33 shares in the property distribution, he then owned all the outstanding B&A stock and was in effect awarded the value of the treasury shares; a value which was a community asset.

■ We first must reject the wife's contention that the transfer of the option to the corporation deprived the community of an asset worth $190,017. Even if we assume that the option was a community asset at the time it was offered to the husband, its value certainly was not the same as the total purchase price of the stock. The wife has not offered any evidence establishing that the option price was less than the actual value of the stock or that it had any particular value of its own. The wife, therefore, has failed to establish the value of the option as a community asset.

■ Moreover, regardless of what the value of the option was when it was offered to the husband, the community lost any rights to it when he transferred the unexercised option to B&A. The community had

not paid anything for the option. Nor does the record support the allegation that the husband acted improperly to benefit his separate property at the expense of the community. There has been no evidence presented establishing that the community was interested in exercising the option nor that it was in the position to do so. The record also does not support an allegation that the husband was engaging in secret maneuvers to build his separate property in preparation for the dissolution. The repurchase transaction occurred in 1969, some five years before the commencement of the dissolution proceeding. Under the circumstances presented, since the community did not expend any money on the option, and the option had no inherent value, we hold that it did not retain rights in the option when it was transferred.

We also reject the allegation that the trial court's failure to dispose of the treasury shares was in essence an award to the husband of an extra $190,017.

██ Absent special circumstances, property takes on its character as separate or community at the time of its acquisition. *Myrland v. Myrland,* 19 Ariz.App. 498, 508 P.2d 757 (1973). Here, the treasury shares were purchased with the retained earnings of B&A and thus belonged to the corporation. At the time of the dissolution proceedings the husband owned 80 of the outstanding shares of B&A as his separate property and 5 as custodian for the children, while the community owned 33 shares. The community, therefore, owned a 33/118 percent interest in the value of the corporation, including the $190,017. The trial court held that following the repurchase transaction the treasury stock had no value; consequently, the outstanding shares including those which were community property represented a greater portion of the corporation's value. In awarding the 33 B&A shares to the husband as community property, the trial court necessarily apportioned to the community its right in the $190,017.

The wife's position is that following the repurchase transaction, treasury shares retained their value of $190,017 instead of the remaining outstanding shares increasing in value. She concludes that by holding that the treasury shares had no value, the court failed to consider the $190,017 in the property distribution and deprived the community of its rights in that asset.

The record does not support the contention that the trial court failed to consider the total value of the corporation in making the distribution of property. The B&A balance sheet used by the court makes specific reference to the treasury shares transaction. Whether the $190,017 is represented in the retired treasury shares or the outstanding stock is irrelevant as the community in either case is entitled to the same percentage of the value of the corporation, 33/118 percent. The crucial question for this court's determination is whether the property awarded to the wife in the distribution of community property is adequate to offset the value of the community asset awarded to the husband.

██ The property distribution lists the wife as having received $267,509.44 of the community property and the husband $157,436.36. In determining the amount of the husband's award the court calculated the value of the 33 shares of community owned stock by using the fair market value of the corporation, $200,000. In Arizona, however, the book value of the stock of a close corporation, rather than fair market value, is *prima facie* evidence of its value, *Percy v. Percy,* 115 Ariz. 230, 564 P.2d 919 (Ct.App. 1977), and there has been no evidence presented to show why this standard should not be applied to the present case. The book value of B&A at the time of the dissolution was $231,887.42.

The value of the 33 shares of B&A is $8,914.71 higher when based on book value instead of fair market value. The actual value of the husband's award of community property, therefore, was $166,349.07. Even with this revised valuation the wife's award of the community property exceeded the husband's award by more than $100,000.

### B. Increase in the Value of the Husband's Separate Shares of Stock

The wife also argues that the distribution of the community property was dispropor-

tionate because it did not include the increase in the value of the husband's separately owned shares of B&A stock as a community asset. She asserts that this increase is community property because it was the result of the husband's individual efforts as manager of the corporation during the marriage.

In *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (Ct.App.1977), the Court of Appeals dealt with the similar issue of whether the profits of a husband's separately owned corporation, managed by the husband during marriage, was a community asset. The Court ruled that the classification of profits depends upon whether they resulted from a natural growth in the business, which would be a separate property profit, or due to the husband's skill in management, which would produce a community profit. The Court also ruled, however, that when the husband receives an adequate salary for his labor, which is a community asset, it is assumed that his community labors are compensated for and the profits are his separate property. *See, also, Lincoln Fire Insurance Co. v. Barnes,* 53 Ariz. 264, 88 P.2d 533 (1939).

The question of whether an increase in the value of stock of a husband's separately owned and managed corporation is community property was considered in *Everson v. Everson,* 24 Ariz.App. 239, 537 P.2d 624 (1975). Just as in the case of profits, the court in *Everson* stated that the classification of an increase depends on whether it is due to a natural growth or to the personal skills and efforts of an individual. See also *Nace v. Nace,* 104 Ariz. 20, 448 P.2d 76 (1968). Neither *Everson* nor *Nace,* however, consider the effect of an adequate salary paid to the husband as compensation to the community for his efforts.

We hold that the rule in *Nelson* regarding the effect of an adequate salary on the classification of the profits of a separately owned business applies to the increase in value of a separately owned business. Since the husband in this case received what appears to be an adequate salary and there has been no contrary contention, we hold that the community was adequately compensated for the husband's labor and the increase in the separately owned stock remains his separate property. *See, Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976).

## II.   SPOUSAL MAINTENANCE

The next issues considered on appeal are whether the trial court erred in determining the amount of spousal maintenance the wife needed and whether the court abused its discretion in setting the monthly award of spousal maintenance at a sum even lower than the amount the court determined necessary to satisfy the wife's needs.

The wife argues that the uncontradicted evidence established that she required $2,108 per month to meet her needs but that the court arbitrarily found she needed only $1,600. Moreover, the court awarded her only $1,100 per month. The wife concludes that such an arbitrary award is impermissible. *Lindsay v. Lindsay,* 115 Ariz. 322, 565 P.2d 199 (Ct.App.1977).

It is well settled in Arizona that an award of spousal maintenance is subject to only a limited review and if there is any reasonable evidence to support the judgment of the trial court, it will not be disturbed. *Williams v. Williams,* 19 Ariz.App. 544, 509 P.2d 237 (1973). The record in the present case supports the conclusion that some of the wife's claims were extravagant. The trial court could properly disregard such testimony and we find that it was not an abuse of discretion to determine that the wife needed only $1,600 per month.

We also find that under the circumstances of this case the award of $1,100 per month was not improper even though the court determined the wife needs $1,600. ARS § 25–319 provides that a court *may* award spousal maintenance if the spouse seeking it lacks sufficient property to provide for his or her needs and is unable to engage in appropriate employment. The purpose of this statute is to encourage the courts to provide for the financial needs of the parties by a property distribution rather

than by an award of spousal maintenance. *Oppenheimer v. Oppenheimer,* 22 Ariz.App. 238, 526 P.2d 762 (1974). The wife in the present case was awarded in excess of $260,000 in community property, an amount substantially more than the husband's award. She also had separate assets. It was not improper for the trial court to consider the extensive assets of the wife in determining the sum of maintenance she required.

### III. REIMBURSEMENT

The next issue considered is whether the wife is entitled to be reimbursed for expenditures for community obligations which she made out of her separate funds. The trial court found that the separate fund contributions of both parties were not traceable. The wife contends that this is incorrect and cites *Ivancovich v. Ivancovich,* 24 Ariz.App. 592, 540 P.2d 718 (1975), for the proposition that a spouse who expends separate funds for community obligations is entitled to reimbursement.

Even if we assume that the trial court's ruling that the funds were not traceable was erroneous, we must reject the wife's position. The holding in *Ivancovich* arose out of a peculiar fact situation. There, the wife expended a large sum of her separate funds for community necessities because her husband, who had sufficient community assets, refused to do so. The wife had no access to the community property and thus her expenditures of separate funds were not voluntary. Under those circumstances, the Court of Appeals upheld a property distribution that reimbursed the wife for her separate funds. *Ivancovich* does not, however, make reimbursement mandatory. We must now consider that issue.

■ California courts have adopted the rule that a spouse who *elects* to expend separate property on community expenses is entitled to reimbursement from the community or separate property of the other spouse *only if there is an agreement to that effect. Beam v. Bank of America,* 6 Cal.3d 12, 98 Cal.Rptr. 137, 490 P.2d 257 (1971); *See v. See,* 64 Cal.2d 778, 51 Cal.Rptr. 888, 415 P.2d 776 (1966). We believe this a sound rule. To rule otherwise would be to require all married persons to keep detailed accounts of all the money they spent during the marriage and of all community expenses. We do not believe this is the intent of the Arizona statutes regulating the distribution of assets in dissolution proceedings.

■ Unlike the wife in *Ivancovich,* Mrs. Baum voluntarily elected to use her separate funds on community expenses. Mr. Baum did the same. The parties made no agreement regarding reimbursement. We also note that the wife was awarded a greater portion of the community property than was the husband. Under these circumstances we do not believe that the trial court erred in refusing to reimburse the wife for expenditures made out of her separate funds.

### IV. ATTORNEY AND ACCOUNTANT FEES

The final issue raised by the wife is whether the trial court abused its discretion in refusing to award reasonable attorney and accountant fees. The court awarded the wife $10,000 in attorney fees and $1,000 for the cost of an accountant. The wife asserts, however, that her court costs were $35,000. She argues that ARS § 25–324 requires the court to consider the financial resources of both parties before awarding costs for the litigation and since she has no present earning capacity or source from which to make the payment, she is entitled to the total sum of her litigation expenses. She cites *Hatch v. Hatch,* 113 Ariz. 130, 547 P.2d 1044 (1976), for the proposition that when the husband has management of the community property, he must pay for the wife's litigation costs.

■ We disagree with the wife's contention. It is well established in Arizona that the amount of attorney fees in a dissolution action is a matter left to the sound discretion of the trial court. *Burkhardt v. Burkhardt,* 109 Ariz. 419, 510 P.2d 735 (1973). In determining what is a reasonable fee, the trial judge can draw upon his knowledge of the case and upon his own experience. *Johnson v. Johnson,* 12 Ariz. App. 208, 469 P.2d 100 (1970). Here, the

trial judge determined that a reasonable attorney fee for the time and effort of the case was $10,000, approximately the same as the amount charged by the husband's lawyer. We cannot say this is unreasonable.

It is also significant to note that *Hatch* does not apply to the present situation. In *Hatch* the court found that not only did the husband manage the community property but the wife had no means from which she could pay for the litigation. This is not so in the present case. The wife was awarded in excess of $260,000 in community property as well as $10,000 in attorney fees and $1,000 in accountant fees. We cannot say that the trial court abused its discretion in making provisions for the expense of the litigation.

Therefore, we affirm the decision of the trial court.

EUBANK, P. J., and JACOBSON, J., concur.