631 P.2d 115

**In re the Marriage of Mary Jane WISNER, Appellant,**

v.

**Harry Kern WISNER, Appellee.**

No. 1 CA–CIV 4105.

Court of Appeals of Arizona,
Division 1,
Department A.

March 19, 1981.

Rehearing Denied June 2, 1981.

Review Denied June 23, 1981.

Peter A. Neisser, Phoenix, for appellant.

Law Offices of Robert A. Jensen, P.C. and Murphy & Posner by K. Bellamy Brown, Phoenix, for appellee.

## OPINION

WREN, Chief Judge.

This appeal by the wife from a decree of dissolution questions the disposition of certain property and the amounts awarded by the court for spousal maintenance and child support.

The parties, Harry Kern Wisner (husband) and Mary Jane Wisner (wife) were married in Omaha, Nebraska in February of 1962. At that time, wife was a nurse and husband was completing his final year

of medical school. Following eight years of further training by husband in surgery and plastic surgery, the parties moved to Mesa, Arizona in 1970, where husband set up a medical practice in plastic surgery. During their marriage, wife was not formally employed, but rather assumed responsibilities for homemaking and raising of the Wisners' family. The husband filed a petition for dissolution on May 13, 1976. A decree dissolving the marriage was ultimately entered on July 12, 1977.

## SPOUSAL MAINTENANCE AND CHILD SUPPORT

■ Wife first urges that the spousal maintenance and child support awards were arbitrary and inadequate. We disagree. A.R.S. §§ 25–319 and 25–320 confer upon the trial court not only the power to grant such awards, but set forth guidelines to be used in determining their propriety and amount. On review, this court will not disturb that determination if there is any reasonable evidence to support it. *Baum v. Baum*, 120 Ariz. 140, 584 P.2d 604 (App. 1978); *Williams v. Williams*, 19 Ariz.App. 544, 509 P.2d 237 (1973). Here, the judgment grants to wife the custody of one of three children and child support was fixed at $250 per month. In addition, the court ordered husband to pay wife $1,500 per month for six months and $1,000 per month for 30 months thereafter, along with an allocation of community property worth approximately $80,000.

■ In support of her argument that the support awards were insufficient, wife points to evidence that at the time of filing the petition for dissolution, living expenses for both parties were $3,500.00 per month. That figure is, however, deceptive, in that it reflects expenses incurred by the Wisners when they were living together as a family of five in a $130,000 home (subsequently ordered sold as part of the settlement). Wife testified at trial that she expected to be moving into smaller and less expensive quarters; and this, along with the fact that her expenditures now need accommodate only herself and the one child, renders the $3,500.00 figure of little use in resolving the issue. In our opinion there is substantial evidence in the record to support the trial court awards of maintenance and child support.

■ Wife next argues that the court abused its discretion in failing to include in the spousal maintenance award a provision for future modification, citing *Lindsay v. Lindsay*, 115 Ariz. 322, 565 P.2d 199 (App. 1977). This argument is without merit. In *Lindsay*, the trial court was held to have abused its discretion in awarding a lump sum payment of $400.00 per month for three years with no provision for modification. The wife in that case was 49 years old at the time of trial, with no specialized employment skills. Further, there was testimony that she had been wholly unsuccessful in securing employment, and the property distribution to her amounted to less than $7,000. In contrast, the wife here was 39 at the time of trial, trained as a nurse, and contemplating further schooling. Also, as before noted, she received a property award approximating $80,000. Nor is there any indication in the record that she had been unsuccessful in securing employment. We therefore find no abuse of discretion in the trial court's failure to include a provision for modification.

Due to their conceptual similarities, the next two issues raised by wife will be considered together. She first posits that the trial court failed to properly classify certain intangible personal property of the parties, and then asserts that even if the property was properly classified, the court erred in its valuation of that property. The items wife refers to are the following: (1) common stock of husband's professional corporation; (2) goodwill of the corporation; (3) retirement plan assets; (4) social security retirement accounts; and (5) medical license, board certificate and value of post-graduate education received by husband while he was married. We consider these items in order.

## COMMON STOCK OF HUSBAND'S PROFESSIONAL CORPORATION

■ Wife contends that the trial court incorrectly ruled that husband's stock in his

professional corporation was his sole and separate property. We agree. A.R.S. § 25–211 establishes that all property acquired during marriage, except that which is acquired by gift, devise or descent, is the community property of the husband and wife. The stock in question was acquired during marriage and does not fall under any of the exceptions.

Husband, however, argues that the trial court's characterization as separate property was correct by virtue of the provisions of A.R.S. §§ 10–907 and 10–908(6).[1] We think otherwise. These statutes set strict guidelines for the organization and ownership of professional corporations. They are not intended to alter the statutory scheme of A.R.S. § 25–211. *See* A.R.S. § 10–902(4). The stock therefore should properly be characterized as community property.

The trial court's error in characterization does not, however, require reversal, since only errors which prejudice a party's substantial rights justify reversing a trial court's judgment. *In the Matter of the Estate of Tortensen*, 125 Ariz. 373, 609 P.2d 1073 (App.1980); *Seely v. McEvers*, 115 Ariz. 171, 564 P.2d 394 (App.1977). Here, though the court's characterization of the stock as separate property was error, the court went on to find that wife was nevertheless entitled to one-half the value of the stock. We therefore find the error to be harmless and the wife's argument in this regard moot.

In a related argument, wife asserts the trial court erred in its valuation of the fair market value of husband's "interest" in the professional corporation. She claims that the court's figure of $8,050 is not supported by any evidence. The court found:

> The assets of the professional corporation entitled to community property recognition consist of cash on hand, equipment and prepaid expenses. The total value of these assets less liabilities is $8,050.00.

Again we agree. A diligent search of the record has failed to produce any supporting evidence for this valuation and husband has not referred us to any. Accordingly, we remand this issue to the trial court for a determination of the basis for the value fixed, or an appropriate division of this asset.

## GOODWILL VALUE OF THE CORPORATION

Wife next challenges the court's determination that a professional corporation cannot possess a "goodwill" value. In the alternative, she urges that the judge erred in placing no value on the goodwill of husband's corporation. In support of her first argument, wife refers us to a number of cases which support the proposition that a professional corporation can possess goodwill.[2] We do not reach this question, however, since in our opinion, the trial court made no such finding. The judgment merely determined that there was no goodwill value to be attached to *this* professional

---

1. § 10–907. Nature of corporate activity

   A. A professional corporation may only be organized for the purpose and may only engage in the rendering of one category of professional service.

   B. A professional corporation may render professional service only through shareholders, directors, officers, agents and employees who are themselves duly licensed in that category of professional service.

   C. No person who is not licensed in that category of professional service shall have any part in the ownership, management or control of the corporation, nor may any proxy to vote any shares of such corporation be given to a person who is not so licensed.

   § 10–908. Number of incorporators; continuity of life; centralized management; corporate liability; transferability of interest

A professional corporation shall:

\* \* \* \* \* \*

   6. Permit shares to be transferable to persons duly licensed to perform the same category of professional service as that for which the professional corporation was organized, or to the professional corporation itself, provided that this shall not be construed to prohibit such further lawful restrictions thereon upon which the shareholders may agree.

2. *Golden v. Golden*, 270 Cal.App.2d 401, 75 Cal.Rptr. 735 (1969); *In the Matter of the Marriage of Fleege*, 91 Wash.2d 324, 588 P.2d 1136 (1979) (relating to a dental practice); *In re Lukens*, 16 Wash.App. 481, 558 P.2d 279 (1976); *In re Nichols*, Colo.App., 606 P.2d 1314 (1979) (relating to a dental practice).

corporation. On this point the judgment read:

10. That the petitioner is a sole practitioner, has no present plans to engage in any other form of practice, and is a specialist who tends to see a patient for only one surgical procedure of short duration rather than treating a patient over an extended period. The life of the professional corporation is directly and literally tied to the life of the petitioner. *The Court finds that the goodwill of the petitioner's practice to be of no value.* (emphasis added).

In our opinion, the trial court's finding that a professional corporation "is directly and literally tied to the life of the husband" is an incorrect statement of the law and is unsupported by the evidence. A.R.S. § 10-908(3)(a) provides that a professional corporation shall cease to exist upon the death of the last surviving shareholder. Moreover, under A.R.S. § 10-908(6), the shares of a professional corporation are transferable to "persons duly licensed to perform the same category of professional service as that for which the professional corporation was organized..." It is thus conceivable that through transfers of shares, husband could extend the life of the professional corporation indefinitely and well beyond his natural life. Even if such transfers were not to occur, A.R.S. § 10-909(D) provides for transferral of shares of the corporation, upon death of a shareholder, to "persons qualified to own such shares..." Significantly, there is nothing in the record to indicate that husband would not or could not take any of these actions.

Of more importance, we have further determined that the finding that the husband is "a specialist who tends to see a patient for only one surgical procedure of short duration rather than treating a patient over an extended period," while supported by the evidence, is not conclusive that husband's practice possessed no goodwill value. To the contrary, the record is clear that husband's medical practice relied for its success, not on repeat patients, but on repeat *referrals* of patients from physicians and other medical personnel (his so-called "referral base"). In such a situation, the mere lack of the one element, repeat customers, cannot preclude, *ipso facto*, the existence of a goodwill value.

Admittedly, "goodwill" value is a term which is elusive of any precise definition, and courts have long struggled to set forth appropriate criteria for its determination. (*See* C.J.S. *Good Will*, § 1; 38 Am.Jur.2d *Good Will* § 1 and cases cited therein.) In Arizona, goodwill has been defined as "[T]hat asset, intangible in form, which is an element responsible for profits in a business." *Jacob v. Miner,* 67 Ariz. 109, 120, 191 P.2d 734, 741 (1948). It has also been defined as, in its broadest sense, reputation. *Spheeris v. Spheeris,* 37 Wis.2d 497, 155 N.W.2d 130 (1967). These definitions are more usable in this case since they capture the essence of the concept, without placing undue reliance on the aspect of repeat customers.

The court's decision focused on the lack of *repeat* or habitual patients and was undoubtedly premised solely on the following testimony from husband's expert witness:

Q. Okay. So in fact, you still maintain there is no good will in this—

A. In my mind, there is no good will.

The witness went on to state that this opinion was premised upon the lack of repeat patients:

... in valuing a practice, much like buying an accounting practice, I'm buying the opportunity to serve repeat, in our case, clients. Hopefully, we can serve them and keep them. If we don't, we lose them and adjust the price. However, in the absence of even the chance to serve a repeat clientele or, in the case of doctors, repeat patients, what could I possibly be purchasing is the question.

As we have just discussed, the medical practice of a plastic surgeon cannot and need not be dependent on "repeat clientele" for goodwill value to exist. Rather, in the case of a professional corporation, the determinative factors, among other things, are: the practitioner's age, health, past earning power, reputation in the communi-

ty for judgment, skill and knowledge, and his or her comparative professional success. *In re Marriage of Lopez*, 38 Cal.App.3d 93, 113 Cal.Rptr. 58 (1974); *In re Marriage of Lukens*. We hold that the testimony of the witness was therefore based on an erroneous assumption of law. Since the evidence otherwise reflects that husband's professional corporation did possess a goodwill value, we remand the case to the trial court for a determination of that value; recognizing, however, the difficulties presented in placing a value on it. *Jacob v. Miner*. No rigid and unvarying rule for the determination of the value of goodwill has been laid down by prior case law and each case must be determined on its own facts and circumstances. *Spheeris v. Spheeris. See generally*, Annot. *Accountability For Good Will Of Professional Practice In Actions Arising From Divorce Or Separation*, 52 A.L.R.3d 1344.

## LIFE INSURANCE POLICIES AND RETIREMENT PLAN ASSETS

■ The court adopted the cash surrender value of certain life insurance policies on the husband as being their monetary worth for dissolution. Wife proposes that the policies should have been valued at something greater than their cash value, arguing that, even if an insured has drawn on the cash value of a policy, thus reducing it, the beneficiary is still entitled to the full face value of the policy less any cash drawn, if the insured died. Such an argument is fallacious. An insurance policy upon dissolution is its cash value. *Grost v. Grost*, 561 S.W.2d 223 (Tex.Civ.App.1977); *Ray v. Ray*, 336 S.W.2d 731 (Mo.App.1960). *See* de Funiak-Vaughn *Principles of Community Property*, § 233, pps. 528–532 (2d Ed., 1971), *cf. Blaine v. Blaine*, 63 Ariz. 100, 159 P.2d 786 (1945) (referring to value of life insurance policies upon dissolution in terms of cash value.)

■ Wife also protests the court's failure to include in the decree a pre-trial stipulation regarding the so-called "3251 Building". The retirement plan of husband was involved as a partner in ownership of the land upon which this building was located. A completely different partnership owned the building itself. Wife and husband entered into a stipulation that if the land partnership should purchase the building from the building partnership, wife would receive a one-half interest of the retirement plan's land partnership interest. The stipulation is absent from the decree of dissolution, but husband argues that since wife failed to raise this issue before the trial court, it is deemed waived on appeal. *O. S. Stapley v. Logan*, 6 Ariz.App. 269, 431 P.2d 910 (1967). Wife disagrees and asserts that her submission to the trial court of a critique and objection to husband's proposed findings of fact, conclusions of law and judgment and decree of dissolution, in addition to her own motion for hearing and for order adopting wife's proposed findings of fact and conclusions of law, both of which included the stipulation, constituted a valid objection to the judgment and preserved the issue for appeal. We agree. The record so reflects and, therefore on remand, we order that this stipulation be included in the decree.

## THE SOCIAL SECURITY ACCOUNT

■ Vested social security benefits of husband are next considered. Wife points out that under 42 U.S.C. § 401 *et seq.*, an account vests when a wage earner contributes to it six months out of each year for a total of 10 years. With regard to married couples, if the couple remains married at least 20 years[3] and the contributing spouse dies or the couple is divorced, the non-contributing spouse's entitlement at age 60 is secured. However, if the couple is married for 10 contributing years, and the death or divorce occurs between the tenth and twentieth year, the Social Security Act at that time provided that the non-contributing spouse was entitled to no benefits. Wife

---

**3.** Now ten years by virtue of amendments to the Social Security Act 42 U.S.C. § 416(d)(1) and (2), 42 U.S.C. § 402(b)(1)(G).

argues that since the Social Security benefit plan is nothing more than a government-provided pension plan, contingent only upon survival for a requisite number of years, the trial court should have awarded her a sum equal to one-half the benefits possible under the fund, since the contributions to it were paid by the marital community. We cannot agree with this contention. As stated, 42 U.S.C. § 401 *et seq.* provided that, at the time of the decree, a non-contributing spouse's benefits did not vest until he or she had been married for 20 years (unlike the contributing spouse's benefits, which vested after 10 years). Thus, at the time of the dissolution in this case, by operation of the Federal statute, the benefits were the sole and separate property of husband. *Cf. Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (Provisions of Federal Railroad Retirement Act preempt conflicting provisions of California community property statutes).[4]

## MEDICAL LICENSE, BOARD CERTIFICATE AND EDUCATION VALUE

Lastly, wife advances the novel argument that husband's medical license and board certificate are property within the meaning of A.R.S. § 25–211, and, hence, having been acquired by husband during marriage, are community property, as to which she should be awarded one-half the value thereof. Alternatively, she asserts that she should be compensated for her contribution in obtaining them in order to avoid unjust enrichment of husband.

This issue is one of first impression in this state. However, it is not unique and has been the subject of judicial inquiry in other jurisdictions. Most states which have considered the question have rejected the concept that such educational attainments constitute "property". *In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75 (1978); *Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980); *Muckleroy v. Muckleroy,* 84 N.M.

14, 498 P.2d 1357 (1972); *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975); *In re Marriage of Aufmuth,* 89 Cal.App.3d 446, 152 Cal.Rptr. 668 (1979); *Todd v. Todd,* 272 Cal.App.2d 786, 78 Cal.Rptr. 131 (1969); *In re Marriage of Horstmann,* 263 N.W.2d 885 (Iowa 1978); *Hubbard v. Hubbard,* 603 P.2d 747 (Okl.1979). *Contra, Inman v. Inman,* 578 S.W.2d 266 (Ky.App.1979); *Lynn v. Lynn,* 49 U.S.L.W. 2402 (N.J.Super.Ct., Bergen County, December 23, 1980).

In *Muckleroy* it had been argued that the husband's education was the product of the joint labor and industry of both parties after their marriage and was therefore community property. In turning aside this argument the court concluded:

> A medical license is only a permit issued by the controlling authority of the State, authorizing the individual licensee to engage in the practice of medicine. The medical license may be used and enjoyed by the licensee as a means of earning a livelihood, but it is not community property because it cannot be the subject of joint ownership. 84 N.M. at 15, 498 P.2d at 1358.

The same question arose as to an M.B.A. degree earned by the husband in *Graham.* Again the "property" concept was rejected:

> An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In

4. *Guerrero v. Guerrero,* 18 Ariz.App. 400, 502 P.2d 1077 (1972), referred to by wife, is of no assistance in this case, since it involved social security disability benefits which had not only vested but for which payments had actually been made to husband, a totally different situation than that presented here.

our view, it has none of the attributes of property in the usual sense of that term. 194 Colo. at 432, 574 P.2d at 77.

The wife in *Graham* had worked full time throughout the couple's six-year marriage, and had contributed 70 percent of the family income in addition to most of the household work while her husband was acquiring his degree. The trial court found that the degree was jointly owned property and had determined that the future earning value to Dennis Graham of the M.B.A. degree was $82,836.00. Anne was awarded $33,134.00 of that amount. On appeal the supreme court affirmed the reversal of the trial court by the court of appeals. The fact that the decision left Anne with nothing to show for her six years of labor prompted a three judge dissent which strongly urged that the husband's increased earning power represented by the degree should be considered marital property, where there was no accumulated property and the spouse who subsidized the degree was ineligible for maintenance. The dissenting justices bemoaned the fact that Anne Graham walked away empty-handed when, had she been widowed by the tortious act of a third party, she would have been entitled to compensation based on her husband's projected future earning capacity.

The Supreme Court of Iowa in the *Horstmann* case, and the California Court of Appeals in *Todd*, accepted the reasoning of the majority in *Graham* in holding that a law degree was not a communal asset of the spouses for the purpose of distribution upon dissolution of the marriage. *See also Stern v. Stern, supra.*

Unquestionably, if we were to hold that these items are property, by statutory definition they would be community property, A.R.S. § 25–211, and wife would be entitled to an equitable division of their value. A.R.S. § 25–318. As to the method of valuation, wife would have us place an actuarial

dollar value on the increased earning capacity of husband. As an alternate solution, she asserts her right to reimbursement because of her husband's reduced income during his education and training period, and for her part in the joint effort of the community in obtaining that education. To buttress this latter argument of reimbursement, she points to additional language in *Graham* :

> A spouse who provides financial support while the other spouse acquires an education is not without remedy. Where there is marital property to be divided, such contribution to the education of the other spouse may be taken into consideration by the court. (Citations omitted) ... Further, if maintenance is sought and a need is demonstrated, the trial court may make an award based on all relevant factors. Section 14–10–114(2). Certainly, among the relevant factors to be considered is the contribution of the spouse seeking maintenance to the education of the other spouse from whom the maintenance is sought. Again, we note that in this case petitioner sought no maintenance from respondent. 194 Colo. at 433, 574 P.2d at 78.[5]

▇▇▇ We agree with the majority opinion in *Graham* that education is an intangible property right, the value of which, because of its character, cannot properly be characterized as property subject to division between the spouses. In our opinion, the marital property concept simply "does not fit." However, while an *education* itself is not property subject to division, it is still a factor to be considered, in addition to others, in arriving at an equitable property division and in determining matters of spousal maintenance and child support. *Graham; Carlson v. Carlson,* 178 Colo. 283, 497 P.2d 1006 (1972). *Cf., Greer v. Greer,* 32 Colo.App. 196, 510 P.2d 905 (1973) (so-

---

5. Wife further refers us to Arizona case law holding that community contributions to separate property are reimbursable upon death or dissolution. *Horton v. Horton,* 35 Ariz. 378, 278 P. 370 (1929); *Hanrahan v. Sims,* 20 Ariz. App. 313, 512 P.2d 617 (1973). We point out that, unlike here, those cases involved compensation for actual contribution of money to the separate property involved, and that in those cases, unlike here, the items in question were clearly property.

called "alimony" award was actually an adjustment of property rights in consideration of wife's contribution to family expenses while husband was in medical school). Thus, while education, along with the potential for greater earning capacity which can accompany it, is doubtless a factor to be considered by the trial judge in determining what distribution of property would be "equitable", and is even more obviously relevant upon the issue of spousal maintenance, it cannot be deemed property as such within the meaning of the Arizona statute.

Obviously, also, an important factor to consider in the overall picture is the extent to which the non-license or degree holder has already or otherwise benefited financially during coverture from his or her spouse's earning capacity. The rather common situation in which one spouse puts the other through professional school, followed closely by a dissolution upon the completion of schooling, is perhaps the clearest picture of the injustice which may evolve. In that situation, the spouse who has devoted much of the product of several years of labor to an "investment" in future family prosperity is barred from any return on his or her investment, while the other spouse has received a windfall of increased earning capacity. However, the acquisition of a considerable estate obviously solves this problem. Such is the situation here. Wife shared in the fruits of husband's education for many years during their marriage, and ultimately realized a value therefrom by a substantial award to her of the community assets, plus spousal maintenance as set forth above. We find that the court did not abuse its discretion in this regard.

In conclusion, we would like to make some observations concerning wife's argument of "unjust enrichment." In our opinion, unjust enrichment, as a legal concept, is not properly applied in the setting of a marital relationship. Marriage is by nature not an arm's length transaction between two parties. If two individuals wish to define their marriage as such, they may of course do so and memorialize it in a contract that spells out the specific rights and duties of each. However, in the absence of such an agreement, we believe it is improper for a court to treat a marriage as an arm's length transaction by allowing a spouse to come into court *after* the fact and make legal arguments regarding unjust enrichment by reason of the other receiving further education during coverture. In the absence of a specific agreement, such legal arguments simply do not fit the context of a marital relationship. In each marriage, for example, the couple decides on a certain division of labor, and while there is a value to what each spouse is doing, whether it be labor for monetary compensation or homemaking, that value is consumed by the community in the on-going relationship and forms no basis for a claim of unjust enrichment upon dissolution.

We believe if the decision is made that one or both spouses shall receive further education, courts should assume, in the absence of contrary proof, that the decision was mutual and took into account what sacrifices the community needed to make in the furtherance of that decision. In this case, wife's testimony clearly illustrated that the decision as to husband's further training was mutual, consensual and made with full understanding of the sacrifices that necessarily accompanied the decision. There is nothing to support a claim of unjust enrichment. We therefore hold that the items in question are not property, and that the court did not abuse its discretion in denying further compensation to the wife.

Finally, wife argues that the trial court erred in denying her request for an accounting of the professional corporation. The request was made in a counterclaim filed by wife on September 1, 1976, alleging, *inter alia*, that husband had undervalued and hidden assets. The burden of showing that an accounting is necessary is on the party requesting the accounting. *Associates Finance Corporation v. Walters*, 12 Ariz.App. 369, 470 P.2d 689 (1970). The trial court apparently was of the opinion that wife failed to carry her burden and we see no reason to upset that determination.

**342**

Affirmed in part, reversed in part and remanded with instructions.

DONOFRIO, J., concurs.

FROEB, Judge, specially concurring; dissenting in part:

I concur with the rulings, but not necessarily the reasoning and exposition, of the majority on all issues except the issue of goodwill of the professional corporation. As to it, I would uphold the decision of the trial court finding that there was no goodwill value to the husband's professional practice.