727 P.2d 349

**Kathleen CARRIKER, Petitioner/Appellee,**

v.

**Frederick CARRIKER, Respondent/Appellant.**

**No. 2 CA–CIV 5710.**

Court of Appeals of Arizona, Division 2, Department B.

April 30, 1986.

Review Denied Oct. 28, 1986.

Mitchell & Timbanard, P.C. by Sheldon Mitchell and Kerry B. Moore, Phoenix, for petitioner/appellee.

Ridge & Isaacson, P.C. by Warren C. Ridge, Steven J. Duffy, and Sherry L. Murray, Phoenix, for respondent/appellant.

## OPINION

BIRDSALL, Judge.

Three issues are presented in this appeal from the parties' dissolution decree: 1) whether the valuation of a community asset was contrary to the law and the evidence; 2) whether the value of a pension plan of the professional corporation was improperly included as a community asset and improperly calculated; and 3) whether the equal division of certain community property was equitable.

Both husband and wife are ophthalmologists and, before their separation, practiced together in a professional corporation, Affiliated Physicians and Surgeons, Ltd. (APS). At the time of trial he was 63; she was 46. They accumulated considerable wealth during their marriage and are both still able to earn substantial income from the continued practice of their profession.

With one modification, we resolve the issues presented by affirming the trial court.

### VALUATION OF APS

■ The parties agreed that the community asset, APS, the professional corporation in which both had practiced, would go to the husband with an equalizing credit to the wife. The value of that asset was disputed and each party called an expert to testify. The husband's expert fixed the value at $522,000, finding there was no good will. The wife's expert valued the asset at $777,000, including $230,000 for good will. The court found the value to be $677,000, which included $100,000 for good will. The husband argues that, using the wife's figures, the value of the assets with only $100,000 good will would be only $647,000 ($777,000 less $230,000, plus $100,000). Therefore he concludes there is a mathematical error of $30,000. Although we hesitate to label this difference a "mathematical error," we agree that there is no evidence to support the asset valuation of $577,000. The wife refers us to the cross-examination of the husband's expert wherein he agrees that his valuation of the assets could contain error because he used book value instead of market value for some assets. However, contrary to the wife's argument, this evidence does not support a valuation of $577,000. The only figure the expert actually agreed to was possibly $550,000, which was actually less than the value he had given these assets in his written valuation. We hold that the valuation of APS must be reduced by $30,000 and the resulting equalization by $15,000.

■ Citing *Nail v. Nail*, 486 S.W.2d 761 (Tex.1972), the husband also contends that, as a matter of law, professional good will is not a marital asset to be divided upon dissolution of the marriage. See also *Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982); *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (App.1981). We disagree.

A professional corporation may have good will. *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115 (App.1981). Whether APS had good will, the value of which should enhance the value of its stock, is a question of fact. Based on the testimony of the wife's expert, the trial court found that the corporation did have good will and assigned the value of $100,000 to that asset. The evidence shows that the witness considered the factors set forth in *Wisner*, supra, including the practitioners' ages, health, past earning power, reputation in the community for judgment, skill and knowledge, and professional success. These factors are not an exhaustive list as we understand *Wisner* and the authorities cited therein. We will not say that the trial court erred in finding this fact and the appellant is not entitled to any modification of the equalizing amount payable to the wife.

### THE PENSION PLAN

■ The trial court found that the parties' interest in a pension plan of the professional corporation was community property subject to division in the dissolution. The decree divided equally the $1,192,229 present value of the accrued benefits. The

wife is to receive one-half of that amount, or $596,114.50, which includes the benefit attributable to her own earnings, $123,976. The trial court ordered that the wife's share be segregated into a separate account for her benefit.

The plan was formed under the Employment Retirement Security Act of 1974 (ERISA), 29 U.S.C., § 1001, et seq. The Act was most recently amended by passage of the Retirement Act of 1984 (REA), which specifically provides for recognition of state court orders in domestic cases.[1] Pub.L. No. 98–397, 98 Stat. 1426 (1984). However, even before passage of the latter legislation, the federal law, ERISA, did not prevent the division of community property interests in employee benefit plans. ERISA is intended to protect the interests of an employee's spouse and dependents. See, e.g., *AT & T Co. v. Merry*, 592 F.2d 118 (2d Cir.1979). The husband's "McCarty" style argument to the contrary misstates the decided cases. See *Carpenters Pension Trust v. Kronschnabel*, 632 F.2d 745 (9th Cir.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); *Operating Engineers, Local #428 Pension Trust Fund v. Zamborsky*, 650 F.2d 196 (9th Cir.1981). *Kronschnabel* held that ERISA did not preempt a state court from dividing pension benefits as community property between spouses. The court relied on *In re Marriage of Campa*, 89 Cal.App.3d 113, 152 Cal.Rptr. 362 (1979) appeal dismissed, 444 U.S. 1028, 100 S.Ct. 696, 62 L.Ed.2d 664 (1980).

We hold that the trial court properly found the pension benefits to be community property subject to division in the dissolution.

■ The husband next contends that the trial court improperly valued the trust interest. The valuation depends on actuarial computation. Each party produced an expert witness who testified to the value. The trial court accepted the valuation of the wife's expert. The husband contends this witness was not qualified. Our review of the record belies his argument. We find no reason to second-guess the trial court's acceptance of that valuation.

■ Finally, the husband suggests that the equal division of community property is not equitable in this case because the husband is older, has some angina and cardiovascular disease, and does not have the same opportunity for continued financial success as his younger wife. Again, the record demonstrates that these factors were considered by the trial court. The judge nevertheless divided the property as equally as possible. We find no error in such a division. See *Foster v. Foster*, 125 Ariz. 208, 608 P.2d 785 (App.1980). Cases relied upon by the husband involve other facts not present here, such as concealment or waste of assets. See *Neely v. Neely*, 115 Ariz. 47, 563 P.2d 302 (App.1977). Certainly the equal division of the parties' income tax refunds is consistent with A.R.S. § 25–318(A).

The request for allowance of attorney fees is denied and it is ordered that each party shall pay his or her own fees.

Affirmed as modified.

LIVERMORE, P.J., and LACAGNINA, J., concur.

---

1. The REA, which became law after trial but prior to the decree herein, sets forth a statutory exception to the anti-alienation provisions of ERISA. The act specifically provides for the payment of benefits in accordance with the applicable requirements of a qualified domestic relations order. 29 U.S.C.A. § 1056(d)(3)(A) (1985). ERISA now defines a "qualified domestic relations order" to be one "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan...." 29 U.S.C.A. § 1056(d)(3)(B)(i)(I) (1985).