653 P.2d 379

**In the Matter of Debbie WESTBERRY, Petitioner-Appellee,**

v.

**Paul E. REYNOLDS, Respondent-Appellant.**

**No. 1 CA–CIV 5422.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 21, 1982.

---

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Carol Campbell, Phoenix, for petitioner-appellee.

Chris Wotruba, Phoenix, for respondent-appellant.

## OPINION

OGG, Presiding Judge.

This appeal challenges certain orders entered by the trial court that directed appellant/respondent Paul E. Reynolds (father) to pay arrearages in child support, together with accrued interest and attorney fees to the appellee/petitioner, Debbie Westberry (mother).

A divorce was granted to the parties on January 14, 1965 by the Maricopa County Superior Court wherein the mother was awarded custody of the minor child and the father was ordered to pay child support in the sum of $75.00 per month.

The father failed to comply with the child support order and a stormy history of court

actions followed in an attempt by the mother to collect the child support payments on a regular basis.

The pertinent portions of the record indicate that the wife, who resided in Texas with the minor child, filed her initial petition under the Uniform Reciprocal Enforcement of Support Act (URESA) in November, 1969. An order to show cause was held in Arizona, where the father resided, which resulted in a court order in January, 1970 directing him to start paying the $75.00 per month child support. The court did not establish the amount of arrearages, nor did the court order any sum payable on the arrearages.

On February 18, 1977, the mother filed another petition under URESA for an order to show cause as to why the father should not be held in contempt for his failure to pay child support. The mother did not appear in Arizona for such hearing and was represented by the Maricopa County Attorney's Office. At the conclusion of such hearing, Judge Robert W. Pickrell entered an order setting the arrearages at $3,192.00, and ordering the father to pay $75.00 per month child support, together with an additional $25.00 per month to be applied to arrearages.

On December 26, 1979, an amended petition under URESA for an order to show cause was filed. The mother through private counsel also filed a petition for an order to show cause under the original divorce decree, together with a motion to consolidate such hearing with the URESA hearing.

The trial court held a consolidated hearing, with both parties giving testimony. At the conclusion of the hearing, the court, on February 15, 1980, awarded an $8,045.00 judgment to the mother for child support arrearage, together with interest and $750.00 in attorney fees. The father has appealed from this judgment.

The father presents four issues which we will now consider:

I. DID THE TRIAL COURT ERR IN AWARDING THE MOTHER THE SUM OF $8,045.00 in CHILD SUPPORT ARREARAGES?

It appears from the record that the father did not dispute the fact that the total arrearage from the date of the divorce amounts to the sum of $8,045.00. He contends that at the order to show cause hearing under URESA on April 11, 1977, Judge Robert W. Pickrell set the amount of arrearages at $3,192.00 covering the period from the date of divorce on January 15, 1965 through March, 1977. The father argues that such an order is res judicata as to the arrearage owed for such period of time. The father further argues that the records indicate the arrearage from April, 1977 through December, 1979 comes to a total of $525.00. Under this theory of the case, the maximum arrearage would amount to $3,717.00 rather than the $8,045.00 ordered by the court.

The mother argues that the $3,192.00 sum set as the arrearages at the March 30, 1977 order to show cause under URESA is not res judicata as to the amount of arrearages found due under the original divorce judgment. The mother reasons that the stipulation agreed to by the county attorney and the father's counsel, which was adopted by the court, related only to the URESA action and did not change the amount of arrearage due under the original divorce judgment.

We agree that the arrearage set in the URESA hearing is not res judicata and does not control the amount of arrearage due under the original divorce decree. Arizona recognizes the rule that liability to pay and the right to receive child support become fixed on the date set for payment in the divorce decree. *Solove v. Solove,* 12 Ariz.App. 203, 469 P.2d 95 (1970). Child support payments may not be altered retroactively. *Hatch v. Hatch,* 113 Ariz. 130, 547 P.2d 1044 (1976).

URESA is only a supplemental remedy for the enforcement of support orders, and the orders issued by a court acting as a

responding state do not affect or supersede any previous order of support. *Howard v. Howard,* 191 So.2d 528 (Miss.1966).

The provisions of the Arizona Revised Uniform Reciprocal Enforcement of Support Act also support our resolution of this issue. A.R.S. § 12–1652 states: "The remedies provided in this article are in addition to and not in substitution for any other remedies." A.R.S. § 12–1680 reads:

A support order made by a court of this state pursuant to this article does not nullify and is not nullified by a support order *made pursuant to any other law* or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance. (emphasis added)

The child support order entered in the original divorce decree was made "pursuant to any other law" and by the express terms of A.R.S. § 12–1680, it cannot be nullified by a support order made in a URESA child support proceeding.

The father further argues that the trial court erred in refusing to apply the provisions of A.R.S. § 12–1551 as a valid defense to support payments that were delinquent for over five years after they were due and payable. The portion of A.R.S. § 12–1551 applicable to the pertinent time period reads:

A. The party in whose favor a judgment is given may, at any time within five years after entry of the judgment, have a writ of execution issued for its enforcement.

B. No execution shall be issued upon a judgment after the expiration of five years from the date of its entry unless the judgment is revived by affidavit or an action is brought thereon within five years from the date of the entry.

The father reasons that A.R.S. § 12–1551 places a five-year statute of limitation on the delinquent child support payments and that he should not be held liable for any delinquent payments incurred prior to 1973.[1]

The mother presents several theories as to why her claim for child support arrearages was not barred by any applicable statute of limitation.[2] In refusing to apply the statute of limitation defense, the trial court did not set forth the specific theory upon which he based his decision. This court must therefore confirm the trial court's decision if it is supportable by any of the legal theories properly presented to the trial court. *Lawrence v. Valley National Bank,* 12 Ariz.App. 51, 467 P.2d 763 (1970).

Initially we agree with the mother's contention that the filing of her URESA action in November, 1969 extended the time period for five years in which she could execute upon the delinquent child support judgments incurred prior to that date. A.R.S. § 12–1551 applies to a divorce decree where child support payments were to be made in monthly installments because each installment is enforceable as a judgment when it becomes due. *Bruce v. Froeb,* 15 Ariz.App. 306, 488 P.2d 662 (1971). As a consequence, all unpaid installments maturing more than five years before the filing of the URESA petition are barred unless they are revived by affidavit or a court action. The filing of the URESA petition in November, 1969 was a court action under A.R.S. § 12–1551 and revived all past delinquent judgments going back to the date of the original divorce decree in January, 1965. Such action extended the collectibility of the support judgments for an additional five years.

1. The father takes note of the fact that A.R.S. § 12–2453(C), which was amended in 1979, now sets the time limitations on the collection of delinquent child support payments. The statute reads that "[S]uch an order is continuing from the date of entry and is not barred from enforcement until two years after the duty to support the child terminates."

2. While both parties refer to A.R.S. § 12–1551 as a statute of limitation, it is not a true statute of limitation for the bar of A.R.S. § 12–1551 can be lifted only by the filing of the requisite affidavit or by court action. *Chudzinski v. Chudzinski,* 26 Ariz.App. 130, 546 P.2d 1139 (1976).

■ We further find that the rule as to the allocation of payments as set forth in *Chudzinski v. Chudzinski,* 26 Ariz.App. 130, 546 P.2d 1139 (1975), when considered together with the revival of the delinquent judgments, supports the arrearage order of the trial court. This allocation rule states that a debtor may direct that any payment made by him is to be applied to one of several obligations owed to a creditor, but if he fails to do so, the creditor may apply the payment where he chooses and if the creditor fails to do so, the law will apply the payment to the oldest debt. In this case, as in *Chudzinski,* neither of the parties allocated any particular support payment to any particular unpaid monthly support judgment; therefore, all payments as a matter of law must be applied to the oldest outstanding support arrearages. When this is done, there is support in the record for the arrearage order of the trial court.

■ No findings were requested by the parties, nor were any made by the trial court. Therefore, in the absence of evidence to the contrary, this appellate court must assume that the trial court made such findings and proper allocations as are necessary to support its judgment. *Silva v. De Mund,* 81 Ariz. 47, 299 P.2d 638 (1956).

## II. DID THE TRIAL COURT ERR IN CONSOLIDATING THE ORDER TO SHOW CAUSE IN THE DIVORCE ACTION WITH THE ORDER TO SHOW CAUSE IN THE URESA ACTION?

The father claims it was error for the trial court to consolidate the two orders to show cause relative to his failure to pay up the arrearage in his child support payments. Such consolidation was made upon the mother's motion to consolidate and the father alleges he was never served with such motions in accordance with Rule 5(a) of the Arizona Rules of Civil Procedure. This rule requires such motions to "be served upon each of the parties."

■ A review of the record indicates that the father never objected to such a consolidation and that he participated in the consolidated hearing without voicing any objection. There was never a motion to vacate the order of consolidation.

■ Where the record does not reflect that an argument was advanced at the trial level, an appellant is precluded from raising it for the first time on appeal. *Conner v. El Paso Natural Gas Co.,* 123 Ariz. 291, 599 P.2d 247 (App.1979).

## III. DID THE TRIAL COURT ERR IN AWARDING ATTORNEY FEES IN THE SUM OF $750.00 TO THE MOTHER?

The father argues that no attorney fees should be awarded since there was no request for attorney fees in the two orders to show cause. The first mention of attorney fees was at the January 7, 1980 hearing wherein counsel for the mother requested an award of $240.00 in attorney fees. Again at the January 30, 1980 hearing, counsel for the mother asked for attorney fees and stated "[O]ur attorney fees are $250.00."

The wife argues that the award of attorney fees under A.R.S. § 25–324 is a matter within the sound discretion of the trial judge and that the award of $750.00 for all hearings was not an abuse of discretion. *See Burkhardt v. Burkhardt,* 109 Ariz. 419, 510 P.2d 735 (1973); *Baum v. Baum,* 120 Ariz. 140, 584 P.2d 604 (App.1978).

A.R.S. § 25–324, which governs the award of attorney fees in such a case, reads as follows:

The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter. For the purpose of this section *costs and expenses may include attorney's fees,* deposition costs and such other reasonable expenses as the court finds necessary to the full and proper presentation of the action including any appeal. (emphasis added)

 The mother's attorney submitted proof, through time sheets and an affidavit, that 42.5 hours had been expended in connection with this case through February 27, 1980. We find no abuse of discretion in the award of attorney fees.

## IV. DID THE TRIAL COURT ERR IN GRANTING COMPOUND INTEREST RATHER THAN SIMPLE INTEREST IN COMPUTING THE TOTAL INTEREST DUE FOR EXECUTION?

The father argues that the trial court erred in signing the mother's execution of judgment in the amount of $15,407.00. This sum was arrived at by using compound interest in computing the total interest due on the judgment.

Both parties concede there are no Arizona cases directly in point; however, the mother relies on the case of *Greer v. Greer,* 56 Ariz. 394, 108 P.2d 398 (1940), as a case supporting the better rule that overdue and unpaid interest is simply money due, just the same as the principal debt at maturity is money due.

We find the *Greer* case to be inapposite to the facts of this case. In *Greer,* the plaintiff sued to collect on two promissory notes where both notes contained a provision specifically authorizing compound interest. The holding in *Greer* on this issue as stated by the court was simply that: "... [w]e hold, therefore, that compound interest, in and if itself, when agreed upon in advance by the parties to a note, is not contrary to the laws of Arizona." *Id.* at 398, 108 P.2d at 339.

In *Jarvis v. Jarvis,* 27 Ariz.App. 266, 553 P.2d 1251 (1976), this court was also concerned with the issue of fixing interest on a child support arrearage judgment. Al-though the precise issue of the propriety of compound interest was not raised, the disposition of the interest issue is instructive here. In *Jarvis,* this court held that each installment of a child support order is vested as it becomes due and "it constitutes [a] legal indebtedness for which the law allows the imposition of interest at the legal rate of six per cent per annum." *Id.* at 268, 553 P.2d at 1253.

A.R.S. § 44–1201, as it read for the pertinent time period involved in this case, provided:

A. Interest for any legal indebtedness shall be at the rate of 6% per annum unless a different rate is contracted for in writing.[3]

 In our opinion, this statute mandates that simple interest at the rate of six per cent per annum must be used to calculate the interest due on the child support arrearages and judgments entered in this case. We find that the trial court erred in using compound interest rather than simple interest on such computations.

The award of $8,045.00 to the mother for child support arrearages is affirmed. The award of $750.00 attorney fees to the mother is affirmed. The execution of judgment in the amount of $15,407.00 is set aside and this case is remanded to the trial court with directions to use simple interest rather than compound interest in calculating the amount of the judgment for execution.

FROEB and CORCORAN, JJ., concur.

---

**3.** A.R.S. § 44–1201 was amended, effective December 14, 1979, to allow interest on any judgment "at the rate of ten per cent per annum."