STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellant,

v.

Gary DUNNING, Appellee.

No. S–6373.

Supreme Court of Alaska.

Nov. 9, 1995.

R. Poke Haffner, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Gary Dunning, pro se, Fairbanks.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, MOORE and EASTAUGH, JJ.

## ORDER

On consideration of appellant's motion for clarification, filed on August 28, 1995,

IT IS ORDERED:

1. The motion for clarification is GRANTED.

2. Opinion No. 4237, published on August 18, 1995, is WITHDRAWN.

3. Opinion No. 4278 is issued on this date in its place. The opinion is modified at page 2, line 5 with the addition of a new footnote which will be keyed to "Superior Court Judge pro tem." This new footnote will read as follows:

> 1. We agree with Judge Wood's opinion in all respects except for his use of "jurisdiction" and "statutory jurisdiction" in Sections III.B. and IV. of his opinion. We disapprove of such phraseology. The appropriate terminology is "statutory authorization" or "authority."

Entered by direction of the court at Anchorage, Alaska on November 9, 1995.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

PER CURIAM.

The Child Support Enforcement Division (CSED) takes the position that its administrative establishment of Gary Dunning's level of child support was within its statutory authority. In support of this position, CSED asserts that statutory authorization for the support order it entered in response to the State of Montana's request is found in AS 25.27.020(a)(7), AS 25.27.022 and AS 25.27.140. Additionally, CSED relies upon the legislative history of the 1988 amendments to AS 25.27.020, as well as a broad remedial reading of this statute, to sustain its order under 15 Alaska Administrative Code (AAC) 125.191 (1994).

We conclude that none of the points advanced by CSED are meritorious. Rather, we are in agreement with the opinion entered in this case by Mark I. Wood, Superior Court

Judge pro tem.[1] Judge Wood's opinion is appended, having been edited in conformance with Supreme Court procedural standards.

The judgment of the superior court reversing the decision of the hearing officer is AFFIRMED.

## APPENDIX

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT FAIRBANKS

GARY M. DUNNING, Appellant,

v.

STATE OF ALASKA, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellee.

Case No. 4FA–93–660 Civil.

DECISION ON APPEAL

This is an appeal from a decision of the Department of Revenue, Child Support Enforcement Division (hereinafter CSED) administratively establishing Gary Dunning's child support obligation to his two minor children of $423.00 per month. Mr. Dunning is pro se.

### I. Statement of Facts

Gary Dunning and Patty Jo Garlick had four children: Rose, Patty Jo, Shane, and Shawn. A Wyoming court granted custody of the children to his wife and ordered Gary Dunning to pay $300.00 a month child support ($75.00 a month per child). Rose and Patty Jo are no longer dependent minors. In 1984 Dorothy Garlick, Patty Jo Garlick's mother, gained custody of the children. After Dorothy died, the children's uncle, John Garlick, became their legal guardian. Currently Shane and Shawn live with him in Montana. Pursuant to the Wyoming court order, Gary Dunning pays child support in the amount of $150.00 a month for the two boys through the County Clerk of the Dis-

---

1. We agree with Judge Wood's opinion in all respects except for his use of "jurisdiction" and "statutory jurisdiction" in Sections III.B. and IV. of his opinion. We disapprove of such phraseology. The appropriate terminology is "statutory authorization" or "authority."

trict Court in Montana. At the time the action of CSED against Dunning was initiated and throughout these proceedings, Dunning has been current in his child support obligations under the Wyoming decree.

This is not a case involving Aid to Families with Dependent Children. John Garlick, the uncle and custodian of the two boys, initiated a request through the Montana Child Support Enforcement Division for the establishment of an Alaska child support order. Garlick only wanted to increase the amount of Dunning's child support obligation to $300.00 ($150.00 per minor son). CSED in Alaska did not know about the Wyoming court order. In fact, at the time of the formal hearing CSED had not obtained the Wyoming decree but was proceeding to establish a separate independent administrative order in Alaska which, at the point it was granted, would "take precedence, gaining, in effect, a modification request from the State of Montana." Arrears, if any, would be governed by the Wyoming order and payments under the Alaskan administrative order would satisfy the Wyoming order.

CSED served Dunning with a "Notice and Finding of Financial Responsibility" on December 16, 1992, with CSED's "determination" that Dunning owed $923.00 a month in child support and $10,153.00 in arrears from February 1 to December 31, 1992. Dunning requested an informal hearing which was held in January of 1993. An Informal Conference Decision was issued on January 25, 1993, requiring ongoing child support for the two boys in the amount of $423.00 a month with $5,076.00 owing as arrears for the period from February 1, 1992 until January 31, 1993. A formal hearing was held February 23, 1993 before a senior hearing officer. At the hearing CSED conceded that, as a result of the out-of-state order of support, the administrative order should only be for ongoing support. The hearing officer issued an order requiring Dunning to pay $423.00 a month for the support of his two sons commencing March 1, 1993. Dunning appeals from that order.

The mathematics of the administrative child support order are not in dispute. Dun-

ning is a GS–6 smoke jumper for the federal government as a permanent seasonal employee. In the off season he earns unemployment. His budget is not extravagant. The $423.00 was derived from calculations pursuant to Alaska Civil Rule 90.3. Dunning's complaint throughout the litigation and appeal is that any increase in what he has been paying is more than his meager income and spartan lifestyle can absorb. Dunning does not address whether he has the ability to obtain additional alternative employment in the off season to supplement his income in order to make the increased payments.

## II. *Scope and Standard of Review*

Alaska Statute 25.27.220(b) sets the scope and standard of review:

> Inquiry in an appeal extends to the following questions: (1) whether the agency has proceeded without or in excess of jurisdiction; (2) whether there was a fair hearing; and (3) whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

In this case, Dunning received both an informal and formal hearing following adequate notice so there is no question as to the fairness of the hearing. Dunning argues that the amount of child support determined by the agency, $423.00, was an abuse of discretion in light of his meager earnings which barely cover his reasonable living expenses. During oral argument the court raised the issue of whether CSED has proceeded in this case in excess of its statutory jurisdiction. Supplemental briefing was invited on the jurisdictional issue.

## III. *Discussion*

### A. *The amount of CSED's order*

CSED made its calculations of child support for Dunning's two boys pursuant to Civil Rule 90.3 with the appropriate allowances. Dunning's basic argument is that he cannot make the increased payment and continue to

live as he has been. The court finds that none of Dunning's expenses are unreasonable or extravagant. However, Dunning presented no evidence that he was unable to work in alternative employment in the off season to supplement his seasonal employment. Therefore, the court finds the hearing officer's findings and calculations are supported by both the weight of the evidence and by substantial evidence in light of the whole record. If CSED had jurisdiction to establish an administrative order in Alaska independent of the Wyoming child support order, the order of the hearing officer imposing $423.00 per month for two children under age 18 commencing March 1, 1993 should be affirmed.

## B. *CSED's jurisdiction*

CSED argues that it had authority to establish its administrative order for child support notwithstanding the Wyoming order of child support pursuant to 15 Alaska Administrative Code (AAC) 125.191 (1994) which states:

> If an obligor resides in Alaska and is subject to a child support order issued in another state, the agency will, in its discretion, administratively establish the obligor's support obligation. If a support order is so established, the agency will enforce the administrative order, as well as any arrearages that accrued under the prior order before the establishment of the administrative order. An order of support issued by the agency under this section does not supersede the child support order issued in the other state. Any amounts paid will be credited against amounts accruing for the same period under both orders.

This regulation refers to AS 25.27.020(a), .022, and .060 as authority for CSED's administrative establishment of an independent child support order under these circumstances. Alaska Statute 25.27.060 does not specifically address the issue but sets forth generally the factors to be considered by a court in establishing a child support order and the effect of such order.

Both AS 25.27.020(a)(7) and .022 reference out-of-state child support determinations. Neither expressly authorize an independent Alaska administrative determination of the amount of the child support obligation where that obligation has been determined judicially in another state. Alaska Statute 25.27.020(a)(7) authorizes CSED to

> establish and enforce administratively under this chapter, or through the superior courts of the state, child support orders from other jurisdictions pertaining to obligors within the state. . . .

CSED ignores the direct object of the verbs "establish and enforce" in its strained interpretation of the above statute. The plain language of the statute authorizes CSED to establish child support orders from other jurisdictions pertaining to in-state obligors either by the administrative or judicial process. Nothing in the language of the statute can be reasonably construed to confer upon CSED the power to create an independent order of a different amount against an in-state obligor when there is an existing out-of-state child support court order.

This court's interpretation of AS 25.27.020(a)(7) is supported by the legislative history cited by CSED. Prior to 1988 CSED had no authority to administratively establish and enforce an out-of-state child support order. Until 1988, AS 25.27.020(a)(7) gave CSED the authority to

> establish and enforce through the superior courts of the state, child support orders from other jurisdictions pertaining to obligors within the state. . . .

This cannot be read to have conferred authority on the CSED to judicially establish a child support order independent from an existing out-of-state order. The clear and unambiguous meaning of the statute was to authorize CSED to establish the out-of-state order judicially as an Alaskan order and then enforce it. The additional language in 1988—". . . administratively under this chapter, or . . ."—provided the CSED with the option of establishing and enforcing an out-of-state child support order against an in-state obligor either by the courts or by the administrative process. The language of CSED director Holly Ploog quoted at pages

3 and 4 of CSED's Supplemental Brief, supports this interpretation and does not speak to the establishment of an independent administrative order without regard to an existing out-of-state court order.

Without reference to case law, statute, rule or dictionary, CSED proposes that to establish an order means ("in the parlance of child support enforcement agencies") "creating an order based on the factors used by the responding state's guidelines." *Webster's New World Dictionary* (2d College ed. 1974) does not restrict the definition of establish to create:

> 1. to make stable; make firm; settle ... 2. to order, or gain, or enact (a law, statute, etc.) permanently  3. to set up (a government, nation, business, etc.); found; institute  4. to cause to be or happen; bring about ...  5. to settle in an office or position, or set up as in business or a profession 6. to make a state institution of (a church) 7. to set up (a precedent, theory, reputation, etc.) permanently;  cause to be accepted or recognized 8. to prove, demonstrate ... 9.  Card games to win control of (a suit) so that one is sure of taking all the remaining tricks in it....

■■■ Given the several meanings of establish and the lack of express guidance from the legislature, it is reasonable to conclude that to establish a new child support order where no order previously exists is different from establishing an existing order.  The former must be created and set up permanently.  The latter need only to be caused to be accepted or recognized in another jurisdiction.  Both meet the accepted definitions of establish and provide a consistent explanation of CSED's authority.  Before CSED can enforce an out-of-state child support order in Alaska, it must cause it to be accepted either by a judicial or administrative process.

Nor does reference to AS 25.27.022 authorize CSED to establish administratively an independent child support order which differs in amount from an out-of-state child support order against an Alaskan obligor.  Alaska Statute 25.27.022 states:

(a) The agency may act, under the laws of this state, upon requests from similar state agencies in other states that operate child support enforcement programs under 42 U.S.C. 651–669 (Title IV–D Social Security Act) to establish and enforce against obligors within this state support obligations determined in other states.

(b) Requests from child support enforcement agencies in other states shall be made by application containing the information that this state's agency requires and including written authorization from the requesting state agency and the obligee for this state's agency to initiate action necessary to establish, enforce, and collect the support obligation on their behalf.

■■■ This statute authorizes the Alaska CSED to act as the agent of another, out-of-state CSED to establish and enforce against Alaskan obligors support obligations determined by the out-of-state CSED.  Conceivably under this statute, the foreign agency could have determined that a support obligation exists without determining the amount and thus leave it to Alaska to determine the amount of the support obligation when it establishes it in Alaska.  However, it does not create the authority for an independent Alaska child support order which differs from an out-of-state judicial decree of child support.

Nor does AS 25.27.022 apply to this case.  This is not an AFDC case.  There is no evidence that the Montana CSED determined Dunning's child support obligation.  Montana has passed on the request of John Garlick to establish an Alaskan child support order.  The child support obligation is based on a Wyoming order.  Therefore, AS 25.27.020(a)(7) controls.

CSED argues that the policy behind the statutes pertaining to the establishment and enforcement of child support obligations require a liberal construction in order to meet the needs of the dependent children.  In this case, there has never been a determination that the minors' needs were not being met, only that the custodian's financial situation was tight.  This is not a case of the deadbeat dad who has shifted the burden of his children's support to the state.  Dunning stands

willing to have his boys live with him and to support them. He has remained current on his child support under the current order. This case does not fit the "general rule" since Dunning is meeting the requirements of the Wyoming decree and there is no evidence that the parents are not meeting their obligation to support their children in this case.

*Ralston v. State*, 728 P.2d 635 (Alaska 1986), is distinguishable from the case at bar. *Ralston* involved the enforcement of an order obtained by CSED for monthly child support and back child support. Paternity had been litigated and AFDC payments had been made for the support of the child. The Supreme Court liberally construed an Income Assignment Order which had been issued under Title 47 against Ralston for ongoing child support to also apply to the order for arrearages in child support. The enforcement tool, the Income Assignment Order, was expanded by interpretation to effectuate the purposes of the statute. In the case at bar there is no issue as to enforcement of an existing out-of-state order. The issue is whether CSED can establish an independent administrative order against Dunning which differs from the out-of-state decree. Rather than expanding the applicability of an existing enforcement tool as in *Ralston*, here the issue goes to CSED's jurisdiction to administratively establish a new support order despite the existence of a child support order from another state.

CSED cites another enforcement case for the proposition that a responding URESA jurisdiction can establish a child support order without regard to, or effect on, the initiating state's order. *Westberry v. Reynolds*, 134 Ariz. 29, 31–32, 653 P.2d 379, 381–82 (App.1982). However, *Westberry* did not deal with the jurisdiction of CSED to establish an out-of-state decree but involved the effect of an Arizona URESA judgment for child support arrearages on an Arizona divorce decree. In that case the parties were divorced in Arizona in 1965 and the father was required to pay $75.00 a month in child support under the Arizona decree. The father failed to pay his child support. The mother and child moved to Texas, and in 1969 initiated a URESA request for payment of child support which was forwarded to Arizona where the father resided. Without addressing arrearages, an Arizona court acting on the URESA petition ordered the father to pay $75.00 a month child support. In 1977 pursuant to another URESA petition, the Arizona court set the arrearages in the URESA action at $3,192.00 and ordered the father to pay $25.00 a month more than the $75.00 child support to reduce the arrearages.

In 1979 another URESA petition was filed in Arizona against the father and the mother also initiated an action under the original divorce decree in Arizona. These actions were consolidated and following a hearing the trial court awarded the mother $8,045.00 in arrearages plus attorney's fees.

On appeal, the father claimed that the 1977 URESA judgment for arrearages was *res judicata* and that he should only be liable for $3,192.00 in arrearages plus the $525.00 which accrued between 1977 and 1979. The Arizona court disagreed holding that the divorce decree, not the URESA action, controlled and the child support payments may not be altered retroactively. *Id.* at 381. The court further went on to state:

> URESA is only a supplemental remedy for the enforcement of support orders, and the orders issued by a court acting as a responding state do not affect or supersede any previous order of support.

*Id.* at 31–32, 653 P.2d at 381–82 (citation omitted).

That is the exact opposite proposition asserted by CSED in its Supplemental Brief. In the case at bar, CSED is using 15 AAC 125.191 not as a supplemental remedy but as the primary remedy to supersede the effect of the Wyoming decree. While any payments made under the Alaska administrative order would be applied under the regulation to meet the Wyoming order, the effect of the new order is to increase Dunning's child support payments almost threefold from the requirement of the Wyoming order.

■ The language of AS 25.22.020(a)(7) is clear and unambiguous in its authorization of CSED to establish and to enforce foreign decrees against Alaskan obligors either judicially or administratively. No express au-

thority in the statutory scheme empowers CSED to create an administrative child support order independent and different from the foreign child support decree. Nor has CSED presented any case authority from any jurisdiction interpreting a similar statute in the manner in which CSED is attempting to interpret AS 25.22.020(a)(7) to justify 15 AAC 125.191. The party asserting that a clear and unambiguous statute means something else must bear a heavy burden to establish contrary legislative intent. *Sonneman v. Knight*, 790 P.2d 702, 707 (Alaska 1990). The legislative history set forth by CSED supports the court's interpretation of the statute. CSED has not met its heavy burden of showing contrary legislative intent. Therefore, CSED lacks jurisdiction to administratively create a child support order against an Alaskan obligor under the circumstances existing in this case where the administratively created order modifies the amount of child support which had been previously ordered by a foreign court.

## IV. *Conclusion*

CSED did not abuse its discretion in ordering Dunning to pay $423.00 child support for his two boys who reside in Montana in that the evidence supports the findings of the hearing officer. However, this court finds that CSED proceeded in excess of its statutory jurisdiction in the administrative creation of that child support order independent and different from the Wyoming court order. Therefore, the decision of the hearing officer is reversed. If CSED still desires to establish an Alaska child support order against Dunning for future enforcement purposes, CSED is authorized to do so consistent with the provisions of the Wyoming decree.

Dated at Fairbanks, Alaska this 22nd day of April, 1994.

/s/ Mark I. Wood
MARK I. WOOD
SUPERIOR COURT JUDGE
PRO TEMPORE