STATE of Alaska, CHILD SUPPORT ENFORCEMENT DIVISION, Appellant and Cross–Appellee,

v.

Keith W. BROMLEY, Appellee and Cross–Appellant.

Nos. S–7833, S–7883.

Supreme Court of Alaska.

Sept. 17, 1999.

Scott Davis, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellant/Cross–Appellee.

Bret D. Cook, Cook, Schuhmann & Groseclose, Inc., Fairbanks, for Appellee/Cross–Appellant.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This appeal and cross-appeal arise out of a dispute over child support payments. Keith Bromley argues that he is entitled to a refund from the Child Support Enforcement Division (CSED) because CSED acted outside its authority in establishing his support obligation. He also contends that in modifying his child support obligation, the superior court should have applied Pennsylvania law instead of Alaska law because his child lives in Pennsylvania. Because Bromley is precluded from contesting whether CSED acted in excess of its subject matter jurisdiction, we hold that its decision must stand and that Bromley is not entitled to a refund on that basis. We further hold that the superior court properly decided to apply Alaska law in modifying Bromley's support obligation.

In its appeal, CSED contends that although the superior court correctly decided to apply Alaska law in modifying Bromley's support obligation, it improperly decided to vary from the Alaska Civil Rule 90.3 formula for determining child support. Because we conclude that the superior court was not justified in departing from the formula and that Bromley's request for modification based on the order's lack of validity was in essence a collateral attack on the 1993 order, we reverse and remand.

## II. FACTS AND PROCEEDINGS

In October 1985 Keith W. Bromley and Patricia G. Marlar were divorced by judgment of the Maine District Court. The court awarded primary physical custody of the couple's one child, Shane (d/o/b 3/21/84), to Marlar, and ordered Bromley to pay $215 a month in child support. In June 1986 the Maine court amended the divorce judgment, increasing Bromley's child support obligation to $315 a month. Following the divorce, Marlar moved with Shane to Pennsylvania and Bromley relocated to Alaska. Neither Marlar nor Shane has ever lived in Alaska.

In August 1992 the State of Pennsylvania asked the Alaska CSED to establish a child support order for Shane. CSED issued a notice and finding of financial responsibility in October 1992. Following an informal conference in November 1992, CSED established Bromley's child support obligation at $695 a month. Bromley appealed on several grounds, but in January 1993 a senior reve-

nue hearing officer of the Alaska Department of Revenue upheld CSED's support calculation. Although Bromley was entitled to appeal that decision to the superior court within thirty days, he did not do so. Thereafter, Bromley made the support payments established by CSED.

Three years later, in January 1996, Bromley registered the Maine child support order in the superior court pursuant to AS 25.25.601.[1] CSED responded that it did not oppose enforcement or prospective modification of the Maine child support order, but that it would object to any attempt to modify the finding of financial responsibility retroactively. CSED then moved to modify Bromley's child support obligation. It contended that under Alaska Civil Rule 90.3(a)(2)(A), Bromley's child support obligation should be twenty percent of his income, or $840 a month.

Bromley opposed the motion, arguing that his support obligation should be calculated under the law of the child's home state, Pennsylvania. In the alternative, he argued that CSED's calculation under Rule 90.3 was erroneous and that his obligation under the rule would only be $795 a month. Bromley also moved for a credit or refund of "funds wrongfully collected" by CSED, insisting that CSED's establishment in 1993 of child support was "void *ab initio*." CSED opposed this motion.

Following a hearing, Superior Court Judge Ralph R. Beistline granted CSED's motion to modify. But instead of increasing Bromley's child support obligation, the court decreased it. Applying Alaska law, the court found that unusual circumstances under Rule 90.3(c)(1)(A), including the fact that CSED's establishment of the support obligation was "in excess of its statutory authority," justified a downward departure from the Rule 90.3(a) formula for determining child support. It decreased Bromley's support obligation to $527 a month, which it asserted was approximately the amount Bromley would owe under Pennsylvania law. The court denied Bromley's motion for a credit or refund. CSED sought reconsideration of the modification order, arguing that the superior court misapplied Rule 90.3. The superior court granted reconsideration, but did not alter its order.

CSED appeals the superior court's departure from the Rule 90.3(a) formula, and Bromley appeals its denial of his motion for a credit or refund and its decision not to apply Pennsylvania law in modifying the Maine support order.

## III. *DISCUSSION*

### A. *Bromley Is Not Entitled to a Refund of Payments Made in Excess of the Maine Order.*

We begin by analyzing Bromley's arguments on cross-appeal. He argues that he is entitled to a refund of child support payments made in excess of the Maine order because CSED's establishment of his child support obligation in 1993 was void *ab initio*. In the alternative, Bromley contends that retroactive application of our decision in *State, Department of Revenue v. Dunning*[2] entitles him to a refund. These arguments present questions of law, which we review de novo.[3] We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

### 1. *Voidness*

Relying on our decision in *Dunning*, Bromley first maintains that CSED had no authority to establish a child support order in 1993 because the Maine order already existed. He equates this lack of authority with a lack of subject matter jurisdiction and contends that decisions made in excess of jurisdiction are void *ab initio*. He therefore concludes that he is entitled to a refund of his payments made in excess of the Maine order.

---

1. AS 25.25.601 provides:
 **Registration of order for enforcement.** A support order or an income withholding order issued by a tribunal of another state may be registered in this state for enforcement.

2. 907 P.2d 1 (Alaska 1995).

3. *See Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. *Id.*

■ We must determine whether CSED's establishment of child support was void. A decision made by a tribunal lacking subject matter jurisdiction may be considered void.[5] Thus, if CSED lacked subject matter jurisdiction over Bromley's child support obligation, then its decision could be set aside as void. But not all decisions made by a forum lacking in subject matter jurisdiction can be contested by a party who participated in the proceedings before the forum. We have previously looked to the Restatement (Second) of Judgments for guidance in determining when a decision can be collaterally attacked on a claim of lack of subject matter jurisdiction.[6] It provides that "[a] judgment may properly be rendered against a party only if the [tribunal] has authority to adjudicate the type of controversy involved in the action."[7] As we observed in *Colville Environmental Services, Inc. v. North Slope Borough*, section 12 of the Restatement states that a tribunal's subject matter jurisdiction in a contested proceeding cannot be contested in later litigation unless:

(1) The subject matter of the action was so plainly beyond the [tribunal's] jurisdiction that its entertaining the action was a manifest abuse of authority; or

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

(3) The judgment was rendered by a [tribunal] lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the [tribunal's] subject matter jurisdiction.[8]

■ In this case, none of the three requirements is satisfied. First, establishment of a child support decree is not plainly beyond CSED's jurisdiction. In fact, the legislature established CSED in part to "establish, enforce, and administer child support obligations administratively under this chapter."[9] Second, even if CSED exceeded its statutory authority, it did not infringe upon another agency's authority or "seriously distur[b] the distribution of governmental powers."[10] The authority of the Maine court was not substantially infringed upon because, when CSED acted, none of the parties resided in Maine. Thus, under section 611 of the Uniform Interstate Family Support Act, the Maine order was subject to modification in another jurisdiction.[11] Third, nothing suggests that CSED was unable to make an informed decision about its jurisdiction. The commentary to the Restatement explains that if "fair opportunity is available to contest subject matter jurisdiction in the [tribunal] whose jurisdiction is in question" and "the rules afford opportunity for appellate review," then the finality of a decision is generally recognized.[12] In establishing the child support order in this case, CSED entertained Bromley's argument that it did not have the "ability" to establish a child support order. Furthermore, CSED informed Bromley of his right to appeal its decision to the superior court within thirty days. Bromley, however, did not exercise this right. In consideration of these factors, we conclude that Bromley cannot challenge CSED's subject matter jurisdiction in this case.

This holding is consistent with our decision in *Dunning*.[13] That case involved a similar factual background. But Dunning directly appealed the CSED determination with which he disagreed rather than bringing a

5. *See Perry v. Newkirk*, 871 P.2d 1150, 1153 n. 5, 1157 (Alaska 1994).

6. *See, e.g., id.; Colville Envtl. Servs., Inc. v. North Slope Borough*, 831 P.2d 341, 345 (Alaska 1992).

7. Restatement (Second) of Judgments § 11 (1982).

8. 831 P.2d at 345–46 (quoting Restatement (Second) of Judgments § 12 (1982)).

9. AS 25.27.020(a)(4).

10. Restatement (Second) of Judgments § 12 cmt. d (1982).

11. *See* AS 25.25.611(a)(1); Unif. Family Support Act § 611 commentary, 9 U.L.A. 396 (Supp. 1998).

12. *Id.* at cmt. e; *see also Wall v. Stinson*, 983 P.2d 736 (Alaska 1999).

13. 907 P.2d 1 (Alaska 1995).

collateral attack. The superior court held that CSED did not have "the power to create an independent order of a different amount against an in-state obligor when there is an existing out-of-state child support court order."[14] It therefore concluded that "CSED proceeded in excess of its statutory jurisdiction," and reversed CSED's child support order.[15] Our initial decision in *Dunning*, which we later withdrew, simply adopted and appended the trial court's decision.

CSED then moved for clarification. In anticipation of challenges precisely like Bromley's, CSED asked us to clarify whether we "intended to equate CSED's lack of statutory authority with a court's lack of subject matter jurisdiction." It explained that "[i]f so, the 1,000+ such administrative orders CSED has entered under its presumed authority may be void. If those orders are void, obligors will raise difficult questions regarding possible refund of monies collected pursuant to those orders and forwarded to custodial parents."

We granted CSED's motion, withdrew our decision, and reissued the decision with a new footnote:

> We agree with Judge Wood's opinion in all respects except for his use of "jurisdiction" and "statutory jurisdiction" in Section III.B. and IV. of his opinion. We disapprove of such phraseology. The appropriate terminology is "statutory authorization" or "authority."[16]

Although "authority" and "jurisdiction" are terms that can be used interchangeably,[17] the differentiation which we made in the new footnote at least suggests that the CSED error was not such a serious one that it could be regarded as "plainly beyond the court's jurisdiction" or a "manifest abuse of authority." We conclude, based on the foregoing reasons, that Bromley may not contest in this collateral proceeding the validity of the 1993 decision. Bromley therefore is not entitled to a refund from CSED on this basis.

### 2. *Retroactivity*

Bromley argues that even if we do not conclude that CSED's 1993 order was void *ab initio*, we should give *Dunning* retroactive effect. He presumably believes that if *Dunning* is applied retroactively, he will be entitled to a refund of his child support payments made in excess of the Maine order.

 Essentially, Bromley seeks retroactive modification of his child support obligation. But we have held that absent special circumstances not present in this case, "courts may not retroactively modify support orders."[18] As we explained in *Hendren v. State, Department of Revenue*, retroactive modification is allowed only where it is explicitly permitted by statute.[19] Because retroactive modification is not statutorily authorized under the circumstances of this case, we conclude that Bromley is not entitled to a refund of any payments allegedly made in excess of the Maine order.

### B. *Alaska Law Controls Bromley's Child Support Obligation.*

We must next determine which state's law governs the 1996 modification of Bromley's child support obligation. This issue presents a question of law, that we review de novo.[20] Bromley contends that because Pennsylvania has the closest connection to Shane, its law should apply. CSED counters that the Uniform Interstate Family Support Act (UIFSA)[21] requires application of Alaska law.

 UIFSA took effect in Alaska on January 1, 1996,[22] replacing the Uniform Reciprocal Enforcement of Support Act.[23] One of

---

**14.** *Id.* at 4.

**15.** *Id.* at 7.

**16.** *Id.* at 2 n. 1.

**17.** *See* Restatement (Second) of Judgments § 11.

**18.** *Hendren v. State, Dep't of Revenue*, 957 P.2d 1350, 1352 (Alaska 1998).

**19.** *See id.*

**20.** *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**21.** AS 25.25.101–.903.

**22.** *See* Ch. 57, § 28, SLA 1995.

**23.** Former AS 25.25.010–.100 (repealed by Ch. 57, § 21, SLA 1995).

UIFSA's governing principles is that in every case only one child support order will exist at a time.[24] To this end, UIFSA provides that a state that issues a child support order has "continuing, exclusive jurisdiction" over the order "as long as [that] state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued."[25] Additionally, the issuing state's law "governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order."[26] Maine was the issuing state. Thus, so long as Bromley, Marlar, or Shane remained a resident of Maine, it retained continuing, exclusive jurisdiction and another state could not modify its order.[27] But a tribunal may modify another state's existing child support order if certain conditions are met. Specifically, under AS 25.25.611(a)(1), if another state's order has been registered in Alaska, then Alaska may modify it if three conditions are satisfied:

(A) the child, the individual obligee, and the obligor do not reside in the issuing state;

(B) the petitioner who is not a resident of this state seeks modification; and

(C) the respondent is subject to the personal jurisdiction of the tribunal of this state.

Where these requirements are satisfied, the "modifying tribunal assumes continuing, exclusive jurisdiction over the only operative child support order."[28] In this case, the three conditions are satisfied: Bromley, Marlar, and Shane no longer reside in Maine, the issuing state; Marlar, who is not a resident of Alaska, seeks modification through CSED; and Bromley is subject to the personal jurisdiction of CSED, the tribunal in Alaska. Thus, under AS 25.25.611(a)(1), the superior court may modify the Maine child support order and assume continuing, exclusive jurisdiction over the child support order in this case.

■ This analysis, however, does not resolve the question of which state's law CSED should use in modifying the child support order. Once Alaska has continuing, exclusive jurisdiction over the order, should the court apply Alaska, Maine, or Pennsylvania law? We answer this question by considering the relevant provisions of Alaska's version of UIFSA. Alaska Statute 25.25.611(b) provides that an order issued in another state is modified as if it had been issued by an Alaska tribunal:

Modification of a registered child support order is subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a tribunal of this state and the order may be enforced and satisfied in the same manner.

We read the use of the term "requirements" to mean that Alaska substantive law applies when Alaska assumes exclusive jurisdiction to modify a child support order.

Although this language might be interpreted to mean that Alaska's procedural rules, but not substantive law, should apply in such a modification proceeding, several sources support our construction. The official comment to UIFSA § 611 explains that when a state has modification jurisdiction, as Alaska does in this case, its substantive law applies: "[I]f the forum has modification jurisdiction because the issuing state has lost continuing, exclusive jurisdiction, the proceedings will generally follow local law with regard to modification of child support orders."[29] Thus, the commentary clarifies that modification of Bromley's child support obligation should follow Alaska law. Consistent with this view, the Oregon Court of Appeals, the only court we are aware of that has squarely

24. *See, e.g.,* Unif. Interstate Family Support Act § 201 commentary, 9 U.L.A. 345 (Supp.1998) (describing UIFSA's "new one-order regime"); Patricia Wick Hatamyar, *Critical Applications and Proposals for Improvement of the Uniform Interstate Family Support Act and the Full Faith and Credit for Child Support Orders Act,* 71 St. John's L.Rev. 1, 4 (1997).

25. AS 25.25.205(a)(1).

26. AS 25.25.604(a).

27. *See* Unif. Interstate Family Support Act § 611 commentary, 9 U.L.A 396 (Supp.1998).

28. *Id.* at 397.

29. *Id.* at 398.

addressed this issue, has interpreted UIFSA § 611(b) to mean that "[o]nce an Oregon court acquires jurisdiction over the foreign support order in accordance with [§ 611(a) ], it is to apply Oregon law to determine the proper amount of the child support." [30]

More importantly, AS 25.25.303, which is virtually identical to UIFSA § 303, directs CSED to apply Alaska "procedural and substantive law," including the rules on choice of law [31] and to "determine the duty of support and the amount payable under the law and support guidelines of this state" when acting as a responding tribunal.[32] The official commentary to this UIFSA section emphasizes that application of forum law "continues as a key principle of UIFSA." [33] As the commentary explains, this principle is based primarily on efficiency concerns: "To insure the efficient processing of the huge number of interstate support cases, it is vital that decision-makers apply familiar rules of local law to the maximum degree possible." [34] Because CSED acted as a responding tribunal in this case, § 303, like § 611, indicates that the superior court appropriately applied Alaska law to modification of Bromley's child support order.

We also consider AS 25.25.604,[35] UIFSA's choice of law provision, which "identifies situations in which local law is inapplicable." [36] Because § 604 defines when a state may diverge from local law, and because § 303 provides that local law applies "[e]xcept as

otherwise provided by [UIFSA]," these sections, read together, imply that forum law applies in all circumstances not expressly identified by UIFSA. The commentary to § 604 reinforces this interpretation; it states that "[a]bsent a loss of continuing, exclusive jurisdiction and a subsequent modification of the order, the [issuing state's] order never becomes 'an order of the responding state.'" [37] Conversely, once the issuing state has lost continuing, exclusive jurisdiction, as Maine has in this case, its order presumably becomes an order of the responding state, Alaska, and Alaska law applies.

The report to Congress of the United States Commission on Interstate Child Support also supports the view that local law applies when a state assumes jurisdiction to modify a child support order. The Commission, which Congress created in 1988 to recommend "how to improve the interstate establishment and enforcement of child support awards," [38] favored a system under which the modifying jurisdiction's law would apply in modification proceedings.[39] In its report to Congress, the Commission noted that it had heard testimony advocating a variety of approaches to deciding which state's law to apply in such proceedings: Some witnesses testified that the law most advantageous to the child should govern, others testified that the law where the obligor resides should govern, and still others testified that the law

---

**30.** *In re Marriage of Cooney,* 150 Or.App. 323, 946 P.2d 305, 307 (1997).

**31.** AS 25.25.303(1).

**32.** AS 25.25.303(2). In its entirety, AS 25.25.303 provides:

> **Application of law of this state.** Except as otherwise provided by this chapter, a responding tribunal of this state shall
> (1) apply the procedural and substantive law, including the rules on choice of law, generally applicable to similar proceedings originating in this state and may exercise all powers and provide all remedies available in those proceedings; and
> (2) determine the duty of support and the amount payable under the law and support guidelines of this state.

**33.** Unif. Interstate Family Support Act § 303 commentary, 9 U.L.A. 360 (Supp.1998).

**34.** *Id.*

**35.** AS 25.25.604 provides:

> (a) The law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order.
> (b) In a proceeding for arrearages, the statute of limitation under the laws of this state or of the issuing state, which is longer, applies.

**36.** Unif. Interstate Family Support Act § 604 commentary, 9 U.L.A. 390 (Supp.1998).

**37.** *Id.*

**38.** United States Commission on Interstate Child Support, *Supporting Our Children: A Blueprint for Reform* xii (1992).

**39.** *See id.* at 91–92.

where the child resides should govern.[40] The Commission ultimately recommended "that the procedural and substantive law of the forum state should govern in establishment and modification proceedings," citing the "ease and efficiency of application of local law by decision-makers" as an important consideration.[41] As discussed above, the official UIFSA commentary echoes this concern for efficiency.[42]

[9] Consideration of UIFSA's §§ 611(b), 604, and especially AS 25.25.303, thus compels our conclusion that when an Alaska tribunal assumes continuing, exclusive jurisdiction of a child support order under AS 25.25.611 for the purpose of modification, it should apply Alaska law to determine the appropriate amount of child support. Therefore, the superior court did not err by applying Alaska law to the modification of Bromley's child support obligation.

### C. *The Superior Court Erred by Departing from Rule 90.3(a).*

█ Because we conclude that it was appropriate for the superior court to apply Alaska law in modifying Bromley's child support obligation, we turn next to CSED's argument that the superior court erred by varying from the Rule 90.3 formula for determining child support. CSED claims that the superior court erred in departing from the rule because Bromley never sought a variance from the rule or presented evidence to justify such a variance and because principles of finality bar Bromley's attack on the child support order. "Whether the trial court used the correct method of calculating child support is a matter of law, therefore we give no deference to the trial court's decision."[43]

Under Rule 90.3, in the case of sole or primary physical custody of one child, the trial court must determine the non-custodial parent's adjusted annual income and multiply it by twenty percent to calculate the child support award.[44] The court may vary the award, however, "for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied."[45] "It may do so only after the most careful scrutiny of the facts in the particular case."[46] Rule 90.3(c)(1)(A) states that good cause to vary from the rule includes findings of "[u]nusual circumstances."[47] Although the meaning of "good cause" depends on the context in which it is used, it *"must focus first and foremost on the needs of the children."*[48]

The superior court found that Bromley established by clear and convincing evidence "that manifest injustice would result if the formula of 90.3(a) were strictly adhered to." In concluding that "unusual circumstances exist here which require variation" from Rule 90.3, the superior court made the following findings:

1. Mr. Bromley has never been in arrears and has cooperated fully with CSED in ensuring Shane's needs have been met.
2. For over three years Mr. Bromley has made support payments which CSED had established in excess of its statutory authority.
3. Shane has never lived in Alaska. Ms. Marlar has never lived in Alaska. Pennsylvania has a lower cost of living than Alaska.
4. There is no evidence to show that Shane's reasonable needs have not been met or that any state has incurred costs related to him. This is true even under

40. *See id.* at 91.

41. *Id.* at 91–92.

42. *See* Unif. Interstate Family Support Act § 303 commentary, 9 U.L.A. 360 (Supp.1998).

43. *Turinsky v. Long,* 910 P.2d 590, 594 n. 10 (Alaska 1996).

44. *See* Alaska R. Civ. P. 90.3(a)(1), (2)(A).

45. Alaska R. Civ. P. 90.3(c)(1).

46. *Coats v. Finn,* 779 P.2d 775, 777 (Alaska 1989).

47. Alaska R. Civ. P. 90.3(c)(1)(A).

48. *Doyle v. Doyle,* 815 P.2d 366, 373 (Alaska 1991) (quotation and citation omitted); *see also Coats,* 779 P.2d at 777 (observing that good cause exists to deviate from the formula when the formula produces an award that substantially exceeds or falls short of the amount needed to provide for the child's reasonable needs).

the former Maine order which fixed support at $315 a month.

5. The formula in Rule 90.3(a) was intended to address the percentage of a non-custodial parent's income which should be paid to meet a child's reasonable expenses while living in Alaska. While relocation of a custodial parent out of Alaska will not normally justify a reduction in support, evidence that the custodial parent and the child have never lived in Alaska would justify a departure.

Given these findings, the superior court set Bromley's child support obligation at the level that it believed would be appropriate under Pennsylvania's child support guidelines:

The state of Pennsylvania, where Shane resides, has determined that approximately 15% of the non-custodial parent's income should go to meet the reasonable expenses of a child in Pennsylvania. This Court feels that Alaska law permits it to set Mr. Bromley's support obligation at $527 a month. This figure represents approximately 15% of Mr. Bromley's income and will adequately meet the needs of his son, Shane.

In our view, this departure from the Rule 90.3 formula was not justified. We will address the superior court's justifications for varying from the formula in turn.

First, the superior court found that Bromley has never been in arrears in his support payments and has cooperated with CSED. But compliance with a support order, while laudable, does not represent an unusual circumstance justifying departure from Rule 90.3.

Second, the superior court noted that Bromley had made payments set by CSED in excess of its statutory authority. Although overpayment might justify a variance from Rule 90.3's child support calculation formula in some circumstances, we need not reach the question of whether the court here properly granted a variance based on overpayment because we agree with CSED that Bromley's overpayment argument was barred by principles of finality.

Whether principles of finality apply to a judgment is a question of law that we review de novo.[49] Res judicata (claim preclusion) prevents relitigation of claims that already have or should have been decided in previous lawsuits: "Once a judgment on the merits of a controversy has been entered, res judicata bars subsequent actions between the same parties on the same claim or on claims that were required to be brought in the original proceeding."[50] The related doctrine of collateral estoppel (issue preclusion) prevents relitigation of an issue already litigated and decided, barring relitigation where:

(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.[51]

Both finality doctrines aim to prevent parties from "again and again attempt[ing] to reopen a matter that has been resolved by a court of competent jurisdiction."[52] Principles of finality may be applied to the decisions of administrative agencies if, after case-specific review, a court finds that the administrative decision resulted from a procedure "that seems an adequate substitute for judicial procedure"[53] and that it would be fair to accord preclusive effect to the administrative decision.[54]

**49.** *See Renwick v. State, Bd. of Marine Pilots,* 971 P.2d 631, 633 (Alaska 1999).

**50.** *Id.* at 633; *see also Jackinsky v. Jackinsky,* 894 P.2d 650, 654 (Alaska 1995).

**51.** *Jackinsky,* 894 P.2d at 654.

**52.** *Engebreth v. Moore,* 567 P.2d 305, 307 (Alaska 1977).

**53.** *Holmberg v. State, Div. of Risk Management,* 796 P.2d 823, 825 (Alaska 1990) (citation omitted).

**54.** *See Johnson v. Alaska Dep't of Fish and Game,* 836 P.2d 896, 908–09 (Alaska 1991).

We apply finality principles slightly differently in the context of child support enforcement. In *Bunn v. House*,[55] we noted that Rule 90.3(h)(1)'s modification procedure "provides an exception to the general principle that final judgments should not be disturbed"[56] and declined to articulate finality principles in preclusion terms. But we emphasized the importance of finality:

> Some courts articulate [statutory modification procedures] in terms of res judicata. That is, they hold that a child support decree is res judicata unless and until there is a material change of circumstances which opens the door to modification. While we believe that such motions to modify child support, under Alaska law, do not technically raise res judicata concerns, the principle of finality is a good one.... A party should not be allowed to relitigate the same facts in the hope of gaining a more favorable result.[57]

Applied to Bromley's case, we believe that it is fair to afford preclusive effect to the administrative tribunal's 1993 child support determination.

 "[B]efore the trial court may modify a child support order under Rule 90.3(h)(1), the moving party must allege and prove a material change in circumstances. Absent changed circumstances, the sound principle of finality requires the order to be treated as final."[58] Bromley and CSED agree that, because the existing Maine order was calculated based upon Bromley's 1986 income, a material change in circumstances existed in 1996 to justify modification of the support order. But Bromley's 1996 arguments in favor of modification and his "Motion for Credit and/or Refund" sought more than an updated calculation. Rather, Bromley sought to obtain a "refund of funds wrongfully collected" pursuant to the 1993

administrative modification of his child support obligation.

Although it rejected Bromley's motion for a refund, the superior court in effect accepted Bromley's reasoning when the court granted Bromley a variance from Rule 90.3's guidelines because "[f]or over three years Mr. Bromley has made support payments which CSED had established in excess of its statutory authority." This rationale—that Bromley should pay less now because he paid too much before—indicates that Bromley's request for modification functioned as a collateral attack upon the 1993 decision. This reasoning also seems to indicate that Bromley asked for and received a retroactive modification of his 1993 support order, which is generally prohibited under both federal and Alaska law.[59]

 We have noted that "[h]owever denominated, a claim is functionally an administrative appeal if it requires the court to consider the propriety of an agency determination."[60] Bromley's claim is properly considered an untimely appeal "because a court could grant the relief he seeks ... only if it determined that the [agency's] prior decision was erroneous."[61] When the superior court granted Bromley a variance, it did so not because Bromley's circumstances had changed, but because it believed that CSED's 1993 decision was erroneous.

In January 1993 a hearing officer rejected Bromley's claim that CSED was without authority to alter the Maine order. At that time, the agency informed Bromley of his right to appeal the decision within thirty days. Bromley failed to do so, instead waiting three years to challenge the hearing officer's decision. Bromley's 1996 motions simply restated his earlier allegations that CSED was without authority to modify the Maine order. The motion for a credit even noted that CSED's "administrative modifica-

---

**55.** 934 P.2d 753 (Alaska 1997).

**56.** *Id.* at 757.

**57.** *Id.* at 757–58 (citations, quotations, and footnote omitted).

**58.** *Rusenstrom v. Rusenstrom*, 981 P.2d 558, 563 (Alaska 1999).

**59.** *See* 42 U.S.C. § 666(a)(9); Alaska Civil Rule 90.3(h)(2); *Boone v. Gipson*, 920 P.2d 746, 749–51 (Alaska 1996).

**60.** *Haynes v. State, Commercial Fisheries Entry Comm'n*, 746 P.2d 892, 893 (Alaska 1987).

**61.** *Id.*

tion was upheld at the hearing even though Bromley questioned the ability of CSED to administratively modify his child support obligation."

The fact that an administrative tribunal has already addressed the merits of Bromley's claims indicates that the proper forum for these allegations is not a motion to modify filed three years after a hearing officer rejected his claims. Rather, Bromley should have appealed. Having foregone the chance to file a timely appeal, Bromley was not entitled "to relitigate the same facts in the hope of gaining a more favorable result." [62] Accordingly, the superior court's second rationale does not support granting Bromley a variance.

Third, the court found that Shane has never lived in Alaska and that Pennsylvania has a lower cost of living than Alaska. Although it is true that Shane has never lived in Alaska, nothing in the record supports the court's finding that Pennsylvania has a lower cost of living. Furthermore, the commentary to Rule 90.3 indicates that another state's lower cost of living does not warrant decreasing child support:

> The relocation of the custodial parent to a state with a lower cost of living normally will not justify a reduction in support. The level of Alaska's guidelines is comparable to the national average. The fact that the obligor parent's income has in effect marginally increased relative to the children's living expenses simply enables the children to be supported at a slightly higher level.[63]

Although we have not adopted or approved the commentary, we often rely upon it "for guidance in child support matters." [64] In this case, it aids our determination that Pennsylvania's cost of living, even if lower than Alaska's, is not the kind of unusual circumstance contemplated by Rule 90.3(c) as justifying a downward departure.

Fourth, the court found that there was no evidence to show that Shane's reasonable needs had not been met. We have expressly rejected the argument that "an increase in the support award is not warranted because the children's needs are being met at the current level of support." [65] "This argument runs counter to the premise of Rule 90.3" because "[a]n obligor parent who experiences an increase in income cannot avoid paying additional support merely by showing that the children's needs are being met by an existing support award." [66] To the contrary, the commentary to Rule 90.3 explains that "[t]he rule operates on the principle that as the income available to both parents increases, the amount available to support the children also will increase." [67] Given that Bromley's income had increased, the superior court was not justified in lowering his support obligation from $695 to $527 a month.

Fifth, the court justified departure from the Rule 90.3 formula on the ground that Marlar and Shane have never lived in Alaska. The court offered no explanation why this circumstance justified departure from Rule 90.3 or made its application unjust. And as discussed above, the fact that the custodial parent and child live in another state with a lower cost of living does not justify a reduction in support.

Finally, Rule 90.3(c)(1)(A) requires a court varying from the formula provided in the rule to consider the custodial parent's income. In this case, however, the superior court made no reference to Marlar's income. In sum, departure from the Rule 90.3 formula for determining the amount of Bromley's child support obligation was not justified.

## IV. CONCLUSION

We conclude that Bromley is not entitled to a refund from CSED for past child support payments. We further hold that the

62. *Bunn,* 934 P.2d at 758.

63. Alaska R. Civ. P. 90.3, Commentary VI.B.4.

64. *Bunn v. House,* 934 P.2d 753, 755 n. 7 (Alaska 1997) (citations omitted).

65. *Berkbigler v. Berkbigler,* 921 P.2d 628, 631 (Alaska 1996).

66. *Id.*

67. Alaska R. Civ. P. 90.3, Commentary II.

superior court did not err in deciding to apply Alaska law to the modification of Bromley's child support obligation. We therefore AFFIRM the superior court's decisions on these issues. But because we conclude that the superior court erred by departing from the Rule 90.3 formula for determining child support, we REVERSE and REMAND for a child support determination consistent with Rule 90.3 and this opinion.