IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

ANGEL JOSEFINA LARREA, *Petitioner/Appellee,*

*v.*

RAVI CHAND, *Respondent/Appellant.*

No. 1 CA-CV 25-0005 FC

FILED 10-29-2025

Appeal from the Superior Court in Maricopa County
No. FN2022-002036
The Honorable Amy Michelle Kalman, Judge

**APPEAL DISMISSED IN PART; AFFIRMED IN PART; REVERSED
AND REMANDED IN PART**

COUNSEL

Alexander R. Arpad, Attorney at Law, Phoenix
By Alexander R. Arpad
*Counsel for Petitioner/Appellee*

Rose Law Group, PC, Scottsdale
By Audra E. Petrolle
*Counsel for Respondent/Appellant*

---

**OPINION**

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1          Ravi Chand ("Husband") appeals from the decree dissolving his marriage to Angel Josefina Larrea ("Wife").

¶2          We affirm the superior court's rulings that Husband failed to prove a right to an offset or reimbursement for separate-property contributions he made to the community during and after the marriage. We also affirm the court's decision to treat a future tax benefit as community property in its equalization analysis and its preclusion of Husband's appraiser's opinion. We reverse the court's valuation of a community vehicle and its use of a rejected home-valuation boost to calculate Wife's equalization award, and we remand so that the court may adjust the award accordingly.

¶3          We dismiss the appeal as much as it challenges the award of attorney's fees and costs against Husband because the court did not resolve the award in the decree, and Husband did not file a notice of appeal after the court entered the separate judgment awarding fees and costs.

**FACTS AND PROCEDURAL BACKGROUND**

¶4          Husband and Wife married in 2018. Wife served a dissolution petition in mid-2022.

¶5          The matter proceeded to a trial in March 2024. But the court continued the trial to a second day in August because of late disclosures from both parties. Finding Husband more at fault for the disclosure issues, the court sanctioned him by awarding Wife interim attorney's fees, to be credited against any future fee award.

¶6          At the trial, Husband argued that he had a right to recoup around $79,000 of separate funds he had deposited during the marriage into a community bank account used for community expenses ("Wells Fargo x3581"). He also argued that he should recoup post-service contributions of separate funds to the community account used to pay a tax liability and

2

recurring community debts, including the monthly car loan payments on the parties' Tesla.

¶7 Wife's financial expert testified on the first trial day and updated his opinions both on the second trial day and in connection with Wife's written closing argument. The expert testified that the transaction history for Wells Fargo x3581 rendered Husband's separate property deposits untraceable. He explained that, "after [many, possibly] thousands of transactions," there was "no way to differentiate one dollar from another," analogizing the situation to both "a scrambled egg that I cannot unscramble" and a can of white paint that, when mixed in with black paint, made the color "completely grey."

¶8 Wife's expert also calculated the values of the parties' two community vehicles: the Tesla and an unencumbered Infiniti. In determining the Tesla's equity value, the expert accounted for the loan payments due by the first trial day. Although the expert testified that he understood more loan payments were due before the second trial day, he did not update his valuation to reflect those payments.

¶9 Wife's expert also opined on the future tax benefit arising from the community's investment in a cryptocurrency firm that went bankrupt. He testified that the tax benefit for the loss was a real asset that only Husband could realize given the investment's structure. He assigned it a value based on the applicable tax rates. On the second trial day, the expert added that he believed Husband had begun to realize the tax benefits.

¶10 Along with the financial expert, Wife offered the testimony and report of an appraiser who valued the community home. In response, Husband sought to introduce a competing appraiser's report or recite the appraiser's opinion during his testimony. But the court precluded the report and prevented Husband from testifying to anything except that he had obtained an appraisal. The court reasoned that although neither party had invoked application of the Arizona Rules of Evidence ("Evidence Rules") via Arizona Rule of Family Law Procedure ("Family Rule") 2, the Evidence Rules governing expert and lay opinions still applied, and Husband was not qualified to offer an opinion under those rules.

¶11 After considering the evidence and the parties' written closing arguments, the court entered the dissolution decree in November 2024. The court determined that the community property should be divided equally. The court adopted nearly all of Wife's expert's positions, finding

that he "was credible and presented an appropriate and logically consistent methodology for calculating community property as well as the competing and offsetting equalization payments due to each spouse." The court agreed with the expert that Husband's separate-property deposits into Wells Fargo x3581 were untraceable and found that Husband provided no clear, convincing, or credible tracing analysis. The court also found that Husband failed to adequately or clearly show payment from his separate funds for recurring community expenses post-service, and it gave him no credit for paying the alleged community tax debt.

¶12 The court divided all community bank accounts (including Wells Fargo x3581) equally, credited Wife for Husband's receipt of the tax benefit for the community's cryptocurrency-investment loss, credited Wife for Husband's receipt of the community home, and awarded the Infiniti to Wife and the Tesla to Husband. The court used Wife's appraiser's opinion to value the home and her financial expert's opinion to value the Tesla, without regard to the loan payments due by the second trial day. The court ordered Husband to pay Wife a substantial equalization.

¶13 The court found in the decree that Wife had a right to recover attorney's fees, expert's fees, and costs under Arizona Revised Statutes ("A.R.S.") § 25-324 because Husband had far more financial resources and he acted more unreasonably in the litigation. The court certified the decree as an appealable judgment under Family Rule 78(b) without deciding the amount of fees and costs to be awarded. Some months later, the court awarded Wife specific legal and expert fees and costs in an appealable judgment under Family Rule 78(c).

¶14 Husband timely filed a notice of appeal from the Family Rule 78(b) decree, but he did not file a notice of appeal from the Family Rule 78(c) judgment calculating the fees and costs. He challenges both the decree and the fee judgment in his appellate briefs.

**JURISDICTION**

¶15 Our jurisdiction is limited to that specifically provided by statute, *Brionna J. v. Dep't of Child Safety*, 247 Ariz. 346, 349, ¶ 7 (App. 2019), and "[w]e have an independent duty to determine whether we have jurisdiction over an appeal," *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 576, ¶ 15 (App. 2015); *Walker v. Walker*, 256 Ariz. 295, 298, ¶ 10 (App. 2023) (A judgment must comply with the applicable procedural rules.). We must dismiss an appeal when we lack jurisdiction. *Davis v. Cessna Aircraft Corp.*, 168 Ariz. 301, 304 (App. 1991).

**¶16** A dissolution decree is generally appealable under A.R.S. § 12-2101(A)(1). *See Walker*, 256 Ariz. at 298, ¶ 11. A family-court litigant may appeal when fewer than all claims are resolved in a decree, so long as "the court expressly determines there is no just reason for delay and recites that the judgment is entered under [Family] Rule 78(b)." Ariz. R. Fam. L.P. 78(b). A claim for attorney's fees can be separate from the decree under Family Rule 78(b). *See Bollermann v. Nowlis*, 234 Ariz. 340, 342, ¶ 8 (2014). But for a fee judgment to be appealable, the court must first determine its amount. *Hernandez v. Athey*, 256 Ariz. 530, 532-33, ¶¶ 5-9 (App. 2023). "Until the court makes the entitlement decision <u>and</u> awards an amount, the court cannot certify any portion of the attorney-fees claim" as appealable. *Id.* at 533, ¶ 8.

**¶17** Here, the court in the dissolution decree resolved the disputed claims and found that Wife was entitled to legal and expert fees and costs, but did not determine the specific amounts. Thus, the court's Family Rule 78(b) certification made only the decree's terms appealable. The fee and cost awards did not become appealable until the court issued the Family Rule 78(c) judgment, which settled the amounts. Because Husband appealed only from the decree, we lack jurisdiction to consider his challenges to the fees and costs awards and therefore dismiss that part of the appeal. We address the balance of the appeal below.

## STANDARD OF REVIEW

**¶18** We review the court's property characterization as separate or community *de novo. Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). We review the court's allocation of community property for an abuse of discretion, upholding the ruling if the evidence reasonably supports it. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007). We view the evidence in the light most favorable to affirming the judgment, *id.*, and we defer to the superior court's determinations on witness credibility, *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347-48, ¶ 13 (App. 1998). We review the court's evidentiary rulings for abuse of discretion and resulting prejudice, *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996), but we review the court's interpretation of procedural rules *de novo, Gutierrez v. Fox*, 242 Ariz. 259, 266, ¶ 28 (App. 2017).

## DISCUSSION

**A.      The Superior Court Correctly Characterized Wells Fargo x3581 as Community Property Without Regard to Separate-Property Contributions During the Marriage.**

¶19      Husband challenges the superior court's characterization of Wells Fargo x3581 as community property, asking to recoup separate funds he deposited into the account during the marriage. We detect no error in the court's characterization of the account as community property without accounting for the separate-property contributions made during the marriage.

¶20      Separate funds do not become community property simply because they are commingled with community funds during the marriage. *In re Marriage of Cupp*, 152 Ariz. 161, 164 (App. 1986) ("[T]ransmutation of separate property to community property [through commingling] occurs only when the identity of the property as separate or community is lost."); *see also O'Hair v. O'Hair*, 109 Ariz. 236, 239 (1973) (When a spouse deposits separate funds into a joint bank account, the marital relationship alone does not presume a gift of those funds to the community.). So long as the separate funds remain identifiable in some manner, they retain their character. *Cupp*, 152 Ariz. at 164.

¶21      But when the transactions (deposits and expenditures) are so mixed that a court cannot tell how much money is separate and how much is community, "a transmutation of separate money into community money occurs." *Potthoff v. Potthoff*, 128 Ariz. 557, 562 (App. 1981). That is, the commingled funds become community property unless the separate property is "explicitly traced" by its proponent. *Kim v. Pak*, 258 Ariz. 594, 597, ¶ 9 (App. 2024) (quotation omitted). The separate-property proponent must meet the burden to identify and trace the separate funds "with clear and satisfactory evidence." *Whitt v. Meza*, 257 Ariz. 176, 181, ¶ 15 (App. 2024). Tracing with sufficient evidence may take various forms. The court may consider circumstantial evidence, so dollar-for-dollar documentation of every transaction is not required. *Kim*, 258 Ariz. at 598, ¶ 17. For example, the separate-property proponent may use percentages to isolate and account for the separate property. *See id.* at 597-99, ¶¶ 8, 15-19. Or he or she may rely on account statements to show that separate contributions could not have been used on community expenses because the balance never fell below the separate amounts and there were no separate expenditures. *Whitt*, 257 Ariz. at 181-82, ¶ 16. But the proponent may not simply rest on the fact that he or she made separate-property deposits into a community

account without accounting for separate expenditures. And that is what Husband did here.

¶22        Husband testified that he deposited around $79,000 of his separate funds into the community account during the four-year marriage. But Husband provided no reliable, systematic analysis tracking the disposition of the separate funds he deposited, including funds from his separate investment account and his separate real estate investments. He failed to trace his separate funds by any method explicitly. The court reasonably found Husband's testimony neither credible nor clear.

¶23        Husband urges that the court should have applied a presumption that the separate funds in a commingled account are used for separate expenses. *See Walker*, 256 Ariz. at 302, ¶ 33 (citing *Blaine v. Blaine*, 63 Ariz. 100, 113 (1945)). But he did not track his separate expenses from the account, and he acknowledged that funds from the account were also used for community expenses. When a spouse contributes separate property to pay community expenses during the marriage, the contribution is treated as a gift to the community unless there is a reimbursement agreement. *See Baum v. Baum*, 120 Ariz. 140, 146 (App. 1978). Husband failed to show how much of the account was used for separate or community expenses.

¶24        The court reasonably adopted Wife's financial expert's opinion that tracing the separate deposits was impossible on the evidence presented. Husband's contention that Wife's expert performed the tracing is untrue. Although the expert acknowledged commingling in the account and at first acknowledged that certain rental deposits could be traced, upon receiving more information, he unequivocally concluded that tracing the separate funds was impossible. And even assuming the expert was incorrect about the tracing being impossible, performing the tracing was Husband's—not Wife's—burden, to a standard of clear and satisfactory evidence. *See Whitt*, 257 Ariz. at 181, ¶ 15. Husband failed to satisfy that burden. He did not prove how any of the separate funds he moved to (or through) the account during the marriage remained separate.

¶25        The court did not err by finding Wells Fargo x3581 to be community property, despite the separate-property deposits made during the marriage.

**B.     The Superior Court Correctly Declined to Order Reimbursement for Separate-Property Contributions After Service of the Dissolution Petition.**

¶26         Husband challenges the superior court's failure to order reimbursement for his payment of community liabilities with separate funds after he was served with the dissolution petition, including a tax debt and the recurring payments for the Tesla and other obligations. The court found: "Husband has not adequately or clearly made a claim for payment of recurring expenses after date of service. There are also significant and legitimate concerns with the adequacy and timeliness of his disclosures on the subject, but even without that issue, the Court is not convinced." We affirm the court's ruling.

¶27         First, the court did not abuse its discretion by declining to reimburse Husband for the community tax debt because he failed to prove its existence. Second, we agree that Husband was not entitled to reimbursement for his post-service separate-property contributions to Wells Fargo x3581, from which community debts (such as the Tesla debt) continued to be paid.

¶28         Separate funds used to pay community obligations during the marriage are presumed to be gifts to the community. *See Baum*, 120 Ariz. at 146. But because the community ends upon service of a petition that results in a dissolution decree, A.R.S. § 25-213(B), separate funds used to pay a community expense post-service are not presumed to be a gift to the community, *Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 15 (App. 2017). Thus, Husband was entitled to reimbursement for the separate funds he contributed to the community account post-service, which the parties used to pay community debts (or that remained unspent), absent clear and convincing evidence that he intended to make a gift to the community. *Id.* at 596-97, ¶¶ 15, 19-20. To prove his claim, Husband had the burden to prove his right to reimbursement—i.e., he had to show that his post-service separate contributions financed community obligations. *See Robertson v. Petz*, ___ Ariz. ___, ___, ¶¶ 25-27, 574 P.3d 232, 240-41 (App. 2025).

¶29         The record shows that Husband and Wife contributed separate funds to the account post-service. But Husband failed to meet his burden of proving a specific amount to which he had a right to be reimbursed for his separate contributions made after service. Husband argues that his post-service separate deposits must have been used to pay community debts because, in mid-June 2022, the month after service, Wells Fargo x3581's balance dropped to around $300. He ignores, however, that

his separate deposits were not the only potential source of community post-service debt payments after the balance dropped to $300. Soon after the drop, Wells Fargo x3581 received significant infusions of community funds from a community investment account—$20,000 in June 2022 (which Husband briefly transferred to a different account that the court later found transmuted to community property) and $31,000 in August 2022. Furthermore, Wells Fargo x3581 was not later used solely for community expenses—it was also used to pay the separate debts of both parties. Although Husband provided a spreadsheet at trial listing expenditures and deposits, he did not show, by any measure of evidence, when or how his separate funds were used above the community deposits.

¶30        We detect no error in the superior court's determination that Husband was not entitled to reimbursement because he failed to prove that he spent his separate property on behalf of the community post-service.

## C.    The Court Correctly Characterized the Future Tax Carry-Forward Credit as Community Property.

¶31        Husband challenges the court's award of an equalization amount to Wife based on his receipt of a tax benefit arising from the community's failed investment in the bankrupt cryptocurrency firm. We affirm the court's ruling.

¶32        Wife's financial expert testified that the community's lost capital investment based on the company's bankruptcy created a tax benefit that, even when unrealized, was a "real," "tangible," "[c]alculatable," and "verifiable" asset. He valued it in his report based on its carry-forward benefit to Husband on future tax returns. The expert's characterization and calculation of the tax benefit was not error.

¶33        Individuals may claim capital loss from one year as a deduction from later-realized capital gains. *See* Brett R. Turner, *Income Tax Carry-Forwards*, 22 No. 11 Equitable Distribution J. 122 (2005). Other jurisdictions have recognized that such a "carry-forward" credit caused by lost community capital is community property subject to distribution at dissolution, valued in terms of the tax savings it is likely to generate. *Id.* (collecting cases); Brett R. Turner, 1 *Equitable Distribution of Property* § 5:9, n.19 (4th ed. 2024) (collecting cases). We agree. Even if the deduction is not immediately possible, it "offer[s] a reliable guarantee of future tax savings to the taxpayer who is able to claim [it]." Turner, *Income Tax Carry-Forwards*, *supra*. It is not, as Husband contends, a speculative or hypothetical benefit.

¶34        Thus, the court correctly characterized the carry-forward credit as community property and correctly considered its value to Husband when calculating Wife's equalization payment.

**D.        The Superior Court Correctly Precluded Husband's Appraiser's Opinion.**

¶35        Husband challenges the court's ruling precluding him from admitting evidence of his appraiser's opinion about the community home's value. We affirm the court's ruling.

¶36        Because neither party chose to require compliance with the Evidence Rules under Family Rule 2, certain Evidence Rules did not apply, including those that limit the use of hearsay and require witnesses to have personal knowledge. *See* Ariz. R. Fam. L.P. 2(b)(1) (specifying that Evidence Rules 602 and 801-807 are among those that do not apply). But the Evidence Rules governing the admissibility of opinion testimony—Evidence Rules 701-706—still applied. *See* Ariz. R. Fam. L.P. 2(b)(2).

¶37        Husband argued that he could offer his appraiser's opinion because the hearsay and personal-knowledge requirements did not constrain him. The court reasoned, however, that the Evidence Rules on opinion testimony still barred its admission. Husband now argues that he could offer the evidence because a property owner is always entitled to opine about the property's value.

¶38        The principle that a property owner is competent to opine on his or her property's value is well-established, with our caselaw recognizing it in condemnation cases predating the adoption of the federal evidence rules (which our rules track as relevant here). *See, e.g.*, *Bd. of Regents of the Univ. & State Colls. of Ariz. v. Cannon*, 86 Ariz. 176, 177 (1959) (describing principle); *United States v. Martinez*, 536 F.2d 1107, 1108 (5th Cir. 1976) (describing the 1975 promulgation of federal evidence rules); *compare* Ariz. R. Evid. 701-02 *with* Fed. R. Evid. 701-02. And the evidence rules accommodate the principle that an owner may testify about his or her property's value. *See* Fed. R. Evid. 702 advisory committee notes to the proposed 1972 rule (The rule governing the admission of expert opinions includes "the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values."); Fed. R. Evid. 701 advisory committee notes to the 2000 amendment (The rule governing the admission of lay opinions, which added a provision that such opinions cannot be based on "scientific, technical, or other specialized knowledge within the scope of Rule 702," was "not intended to affect the 'prototypical

example[s] of the type of evidence contemplated by the adoption of Rule 701,'" such as a business owner's opinion on the business's value arising not from "experience, training or specialized knowledge within the realm of an expert, but . . . [from] the particularized knowledge that the witness has by virtue of his or her position in the business."). The rationale for allowing owner opinions is that an owner "has, by definition, knowledge of the components of value that are useful in ascertaining value." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 304 (App. 1983). In other words, the owner has knowledge "rooted in [his or] her experience as a landowner" about "what makes [the property] valuable." *City of Tucson v. Tanno*, 245 Ariz. 488, 493, ¶¶ 18, 20 (App. 2018).

¶39 The problem here is that Husband did not seek to offer his opinion, but that of his appraiser. To be sure, an owner may rely on collateral information to form his or her opinion. *See, e.g.*, *Town of Paradise Valley v. Laughlin*, 174 Ariz. 484, 486 (App. 1992) (A landowner who purchased property on the advice of others, with no personal investigation, should have been allowed to testify as to his opinion of the property's value.); *United Cal. Bank*, 140 Ariz. at 304 (An owner who calculated value using the Consumer Price Index was offering his own opinion.). Such reliance typically goes only to the evidence's weight, not its admissibility. *See Hartford Accident & Indem. Co. v. Dikomey Mfg. Jewelers, Inc.*, 409 A.2d 1076, 1079-81 (D.C. 1979) (The court correctly admitted an owner's opinion of her jewelry's value that was based on appraisals because she stated that "her own opinion as to value formulated by synthesizing information received from knowledgeable sources," and the opposing party could cross-examine her about the basis for her opinion and could cross-examine one of the appraisers as well.). But the owner must be offering his or her opinion—not merely introducing an absent expert's opinion wholesale. *See id.* at 1080 & n.6 (An owner's flat recitation of an absent expert's opinion was inadmissible.) (citing *Yonan Rug Servs., Inc. v. U.S. Auto. Ass'n*, 69 A.2d 62 (D.C. 1949)); *United States v. 68.94 Acres of Land*, 918 F.2d 389, 398 (3d Cir. 1990) ("The rationale which justifies landowners' opinion testimony—i.e., their special knowledge of the property—does not extend to the mere repetition of another's assessment of the property's value.").

¶40 Here, Husband argued that he wanted to "testify to the existence of the appraisal and the amount that it appraised for." He elaborated that he was "not offering expert testimony, [but] . . . factual information that he requested an appraisal, and this was the amount," and was "just saying this is the appraisal I had done, and this is the resulting amount." But he also stated that he wanted the court to "consider the number." Husband's request was not a request to offer his opinion of the

property's value as informed by the appraisal—it was a request to have the expert's opinion admitted and considered without complying with Evidence Rule 702. The court correctly precluded the evidence.[1]

## E.      The Superior Court Erred in Valuing the Tesla.

**¶41**          Husband challenges the superior court's failure to account for all payments on the Tesla in calculating its value. We agree with Husband that the court erred by calculating the Tesla's value based only on select payments, which impacted the court's equalization analysis.

**¶42**          Payments that reduced the Tesla's debt affected the community's equity value in it. Wife's financial expert recognized this when he accounted for the payments in calculating the vehicle's equity value as of the first trial day. He then conceded that additional payments came due before the second trial day. But neither the expert nor the court considered those added payments when assigning the Tesla's equity value. That was error. The Tesla was a community asset, so its equity value when awarded to Husband was relevant to the court's determination of an overall equitable division of the community property. *See* A.R.S. § 25-318(A).

**¶43**          On appeal, Wife argues that the court's decision not to consider the payments after the first trial day was intended to compensate her for Husband's role in creating the need for the second trial day. We reject Wife's argument for two reasons. First, Wife's theory is speculative as the court never stated it. Second, although the court has broad discretion to determine valuation dates to achieve equity, *e.g.*, *Sample v. Sample*, 152 Ariz. 239, 242-43 (App. 1986), its equitable determinations about property division must be made without regard to fault, *see* A.R.S. § 25-318(A), (C) (Absent waste, the court must divide community property "equitably, though not necessarily in kind, without regard to marital misconduct."). In short, although a party's litigation conduct may be relevant to sanctions, *see* Ariz. R. Fam. L.P. 26, or attorney's fees, *see* A.R.S. § 25-324, it does not affect an equitable property division.

**¶44**          The record reflects no justification for the court's disregard of the effect of the added loan payments on the Tesla's value. We remand so the court may revise the Tesla valuation to account for those payments and

---

[1]          Because we affirm the court's determination on the merits, we need not explain why we reject Wife's argument that Husband waived his objection to the preclusion of the appraiser's opinion.

make any necessary adjustments to Wife's equalization award. We also reverse and remand for the court's use of Wife's boosted home valuation in calculating the equalization—an act that the parties agree was error, given the court's previous rejection of the boost.

## CONCLUSION

**¶45**       We dismiss the part of the appeal that challenges the fee and cost awards. We reverse the dissolution decree's valuation of the Tesla and its use of the boosted home valuation to calculate the equalization payment, and remand so that the court may adjust the equalization in view of all relevant Tesla payments and without regard to the home valuation boost. We otherwise affirm the decree.

**¶46**       Both parties request attorney's fees and costs on appeal under A.R.S. § 25-324. Per our discretion, we deny both parties' requests.

